## MAGID *v.* BYRD *et al.*

1. The motion to dismiss the bill of exceptions in this case is denied.
2. Under the terms of the agreement by which the bondholders created a committee to handle their bonds and to look after their interests in the foreclosure suit, the committee was authorized to make the agreement with Magid which is set out in the second division of the opinion in this case; and under the terms of this latter agreement Magid, in purchasing the mortgaged property and in paying the purchase-price in part, under the bid made by the committee for the bondholders and transferred to him by the committee, with these bonds, did not become an implied trustee for these bondholders, and the property under the facts did not become in his hands impressed with a trust in their favor, Magid not purchasing as substituted trustee, but only as substituted bidder.

  (*a*) Even if Magid became the substituted trustee for these bondholders, he acted (leaving out of view any implied trust arising *ex maleficio*)

Appeal and Error, 3 C. J. p. 461, n. 59; p. 900, n. 96; p. 940, n. 20; 4 C. J. p. 663, n. 92.

Partition, 30 Cyc. p. 179, n. 11, 12.

Pleading, 31 Cyc. p. 333, n. 76; p. 335, n. 77, 79, 80; p. 409, n. 88; p. 410, n. 89; p. 462, n. 90.

Trusts, 39 Cyc. p. 113, n. 67; p. 148, n. 82; p. 160, n. 62; p. 193, n. 8; p. 597, n. 97, 99.

39

in purchasing this property, not for himself or for himself and the bond-holders jointly, but for the bondholders alone, and he and these bond-holders can not be treated as tenants in common, and as such entitled in equity to partition of this property among them as such joint owners.

(*b*) Even should Magid be treated as substituted trustee for these bond-holders, who had used his own funds in buying this property for their account, these bondholders can not recover the property from him with-out having first refunded or offered to refund to him the funds so used by him for their benefit.

(*c*) An implied trust ex maleficio did not arise from the use of these bonds by Magid in paying for this property in part, as he was expressly au-thorized to use them for this purpose.

3. The amendment to the petition, by which a second count was added, set up a new cause of action, and the demurrer upon this ground should have been sustained.

4. Under the terms of the contract set out in the fourth division of the opinion, and under the evidence introduced upon the trial, Magid can not be held as an implied trustee for the depositing bondholders, and the property involved in this case can not be impressed with an implied trust in their favor, either upon the ground that he paid therefor with bonds of the petitioners, or upon the ground that he unlawfully con-verted these bonds by using the same in paying for this property; and the trial judge erred in rendering the final decree in favor of petitioners upon the theory of an implied trust in their favor.

No. 5842. JULY 30, 1927.

Equitable petition. Before Judge J. B. Jones. Habersham superior court. December 7, 1926.

*McMillan & Erwin, Edgar Watkins,* and *Anderson, Rountree & Crenshaw,* for plaintiff in error.

*Dean & Wright* and *Ed Quillian,* contra.

HINES, J. 1. A motion was made to dismiss the bill of exceptions in this case, upon the grounds: (a) that a general demurrer to the original petition and the amendment filed June 7, 1926, the same being designated as the first count, was overruled, to which ruling no exception was taken, and which in consequence was a conclusive determination of the right of the plaintiffs to recover under said count on substantial proof of the facts therein set forth; (b) that the plaintiffs in error do not except to the final judgment and decree of the court; and (c) that while a general demurrer to the second count was overruled, no recovery was had thereon; and the court having found against the relief prayed therein, and having rendered its judgment solely upon the first count, the correctness or incorrectness of the court's ruling on the demurrer to the second count is entirely immaterial.

The first ground of the motion to dismiss is without merit. On June 2, 1926, the defendant, S. M. Magid, demurred to the plaintiffs' original petition, upon various grounds. On June 7, 1926, plaintiffs amended their petition, but this amendment left the petition still with one count. On July 29, 1926, plaintiffs again amended their petition, and by amendment they added a second count. The bill of exceptions recites that on December 7, 1926, the court overruled all demurrers filed by Magid to the original petition on June 2, 1926, and which were renewed by him on November 22, 1926, to the original petition as amended, with the exception of certain paragraphs of the petition which had been cured by amendment; that the court overruled all demurrers filed by Magid to the plaintiffs' petition on November 24, 1926; and that the court also overruled the demurrers filed by Magid to the amendment of June 7, 1926, and to the plaintiffs' petition as amended. Magid assigns error upon the ruling of the court overruling his demurrer of June 2, 1926. As we have seen, this demurrer was renewed on November 22, 1926, to the petition as amended. So the court overruled this renewed demurrer to the petition, filed on June 2, 1926, as amended thereafter. To this judgment, which did not merely overrule the demurrer to the first count, but which overruled this demurrer when renewed on November 22, 1926, to the petition as amended, Magid excepts. He makes five separate assignments of error on this judgment so overruling his renewed demurrer to the petition as it stood amended on November 22, 1926. In the first assignment he asserts that the court erred in overruling the first ground of this demurrer. In the second assignment he alleges that the court erred in overruling the second ground of said demurrer. In his third assignment he asserts that the court erred in overruling the third ground of his demurrer. In his fourth assignment he says that the court erred in overruling the fourth ground of this demurrer. In his fifth assignment he alleges that the court erred in overruling the fifth ground of this demurrer. So the statement in the motion to dismiss, that Magid does not except to the judgment overruling the demurrer to the original petition, is not well taken; and for this reason this ground of the motion to dismiss is without merit.

We are likewise of the opinion that the second ground of the motion to dismiss, that is, that the plaintiff in error does not

except to the final judgment or decree of the court in this case, is likewise not well taken. On December 7, 1926, the court rendered a decree which finally fixed the rights of the parties to the property in dispute. The trial judge, to whom the case was submitted without the intervention of a jury, found in favor of the implied trust set up by the plaintiffs in the first count in their petition; and he decreed that the property be sold, and that from the proceeds of the sale, after paying the costs and expenses of the suit, Magid, the plaintiffs, and the other bondholders receive each their proportionate share, based upon the amount which each had contributed to the purchase of this property. To this judgment Samuel M. Magid excepts upon numerous grounds, which are fully set out in the bill of exceptions. We have seen that he excepts to the judgment overruling his demurrer of June 2, 1926, which, on November 22, 1926, was renewed to the petition as amended. This was such a final judgment as the defendant could except to. If it had been rendered as claimed by him, it would have been a final disposition of the case. Civil Code (1910), § 6138. He likewise excepts to the judgment of the court overruling his demurrer to the second count of the petition, filed on November 24, 1926. But it is insisted by counsel for the defendants in error that the exceptions to this judgment or decree consist of assignments of error based upon the reasons or arguments given by the judge for the judgment or decree so rendered. It is well settled that error can not be assigned upon mere reasons given by the judge for the judgment rendered, because the judgment may be right and the reasoning wrong. *Central Railroad* v. *Smith,* 74 *Ga.* 112; *Smith* v. *Savannah &c. Ry. Co.,* 86 *Ga.* 195 (12 S. E. 306); *Griffith* v. *Finger,* 115 *Ga.* 592 (41 S. E. 993). It is likewise true that a direct bill of exceptions to rulings made pendente lite, which does not assign error upon any judgment, will not be entertained by this court. *Kibben* v. *Coastwise Dredging Co.,* 120 *Ga.* 899 (48 S. E. 330); *Newberry* v. *Tenant,* 121 *Ga.* 561 (49 S. E. 621); *Montgomery* v. *Reynolds,* 124 *Ga.* 1053 (53 S. E. 512). A general exception to the final judgment and an exception to and a specific assignment of error on some antecedent ruling will suffice. *Lyndon* v. *Georgia Railway & Electric Co.,* 129 *Ga.* 353 (3) (58 S. E. 1047). In the case at bar there are exceptions to and assignments of error on the final decree, which are not based merely upon the

reasons given or argument made by the trial judge to sustain such decree. There are specific exceptions to and assignments of error on rulings of law and findings of fact by the trial judge, which entered into the making of the decree. For instance, there is a specific exception to the decree upon the ground that the court erred in not finding and decreeing in favor of the defendant, Samuel M. Magid, and that the deed made to him by the receiver conveyed a fee simple title. Whether we are right or not in holding that there was an exception to the final decree in this case, we have seen that there is an exception to and assignment of error on the judgment of the court overruling the demurrer of S. M. Magid to the petition as amended, and this was such a final judgment as would authorize this defendant to except thereto and bring his case to this court without any exception to the final decree rendered by the court after overruling this demurrer.

2. Does the petition set forth a cause of action? The demurrer admits only such facts as are issuable and well pleaded. *Alexander* v. *Sutlive, 3 Ga.* 27; *Williams* v. *Stewart, 115 Ga.* 864 (42 S. E. 256). The demurrer does not admit conclusions either of law or fact, where the facts are not averred upon which such conclusions are supposed to rest. *Graham* v. *Marks, 98 Ga.* 67, 73 (25 S. E. 931). Both counts in the petition rest upon the existence of an implied trust in favor of the plaintiffs. Do the well pleaded and issuable facts make a case of an implied trust? A mortgage or trust deed given by the Appalachian Corporation to the Central Union Trust Company, upon 5000 acres of land on which there was a large apple orchard, to secure an issue of about $1,250,000 of bonds, was foreclosed in the U. S. District Court. On March 14, 1922, pending such foreclosure proceeding, petitioners and others, who were holders of a large amount of these bonds, by an agreement in writing created and appointed a reorganization committee to handle their bonds and look after their interests in said foreclosure suit, and deposited with said committee $1,098,800 of said bonds. This committee was "vested under the terms of this agreement, as trustee of an express trust, with the legal title to" the bonds so deposited, and the holders thereby did "assign and transfer the same to the committee." By this agreement the committee was "fully authorized and empowered, in the name of the committee as owner, or otherwise, to take or cause to be taken all

such proceedings, legal or otherwise, as to it shall seem necessary or proper for the purpose of protecting and enforcing the rights of the holders of the deposited . . bonds, or otherwise for the purposes of this agreement." The committee was authorized to transfer the bonds into its name or into the names of its nominees, or otherwise, and in case the committee purchased the mortgaged property they were authorized to "use . . bonds deposited under this agreement, in payment, or in .part payment, of the purchase-price thereof, or may pledge the deposited . . bonds, or charge the purchased property or both, for the purpose of procuring funds to make any such payment or to obtain such moneys as may be necessary to discharge prior liens upon the property purchased or to pay expenses of sale." The committee was authorized to exercise in its uncontrolled discretion, in respect to these bonds, "all powers conferred on the owners or holders of such bonds under the terms thereof, or of the first mortgage, or by any indorsement or guaranty thereon or otherwise;" and the committee was further authorized, in general, to do whatever it, "in its absolute discretion, may deem judicious and expedient in order to carry out fully and effectively the purposes of this agreement." The depositaries assumed no responsibility or liability respecting the terms and conditions of this agreement, or of any plan of reorganization proposed or adopted thereunder, and was not to be responsible or liable to any one for any act or acts of any nature whatsoever done by them in good faith in their capacity as depositaries. The committee was further clothed with "the power, if and whenever in its judgment it shall become advisable so to do, to prepare and adopt a plan and agreement for the reorganization or readjustment of the corporation;" and the committee was fully authorized to approve and adopt any plan and agreement for such reorganization or readjustment either before or after the sale of the mortgaged premises and the purchase thereof by the committee, and in such plan and agreement might provide for the sale of the deposited bonds or the resale of the mortgaged premises in whole or in part, and the committee might sell the deposited bonds, or resell the mortgaged premises in whole or in part at such price and otherwise as prescribed or contemplated by any such plan and agreement.

The court directed its receiver to sell this property under the decree of foreclosure; and on July 1, 1925, the property was sold

by the receiver and purchased by Wil. H. Douglas as trustee, on behalf of the committee, for the sum of $200,000. The committee thereupon delivered to the receiver approximately $1,098,800 of these bonds which had been deposited with the committee by petitioners and other bondholders for the purpose of being applied in part payment for this property when the sale was confirmed and completed. The sale to the committee was confirmed by the court on July 23, 1924. It required the payment of $50,000 in cash on the purchase-price on or before August 23, 1924. Upon the payment of this amount the receiver was directed to convey the property to the committee or to the corporation or person to whom such bid may have been assigned in writing, "such assignment being permitted by the court so far as it had power to do so." The decree reserved a lien upon all of the property for the remainder of the purchase-price. It recited that the committee had deposited with the receiver bonds exceeding $1,000,000, for which the receiver had given his receipt, and provided that these bonds were to be retained by the receiver pending the ascertainment of what was due thereon and a settlement with the owners thereof, and the determination of what use, if any, should be made of them in paying off the bid of the committee. The decree directed the receiver to pay the receiver's certificates, the tax liens upon the property, to pay himself the sum of $2500 on his compensation as receiver, and to pay the fees of the attorneys for the receiver and for the trust company. The committee failed to make the cash payment required by the decree confirming the sale of the property to them. On April 16, 1925, the committee and Samuel M. Magid entered into an agreement, the terms of which will now be stated. It recites that the committee, on July 1, 1924, bid in this property at the receiver's sale for the sum of $200,000, that said sale had been confirmed by the court, that the committee had delivered to the receiver in part payment of the purchase-price of the property approximately $1,098,800 of these bonds, that the committee found it was unable to provide the cash payment required to be made under the order of confirmation, that the court had passed an order requiring the committee to comply with their bid on or before April 18, 1925, that the committee after diligent effort was unable to provide such cash payment and to comply with its bid, that the property will be reoffered for sale for the account

of the committee, that in order to avoid such contingency and relieve the committee of its obligations under said bid, it is necessary that the rights of the committee under said bid and confirmation should be transferred to some person who will comply with said bid, that Magid has agreed to take the place of said committee, to comply with said bid and furnish and pay to the court the required cash portion of the purchase-price necessary to be paid into court in order that said bid might be complied with, and has agreed to relieve the committee of all obligations under said bid and to hold it harmless thereunder. In consideration of the mutual obligations undertaken by the parties, "the committee does hereby sell, assign, transfer, set over, and deliver unto the said Samuel M. Magid, or his assigns, all of its rights to said bid and confirmation thereof, as well as all its rights in and under the same, and does hereby authorize the said Samuel M. Magid to use the bonds deposited by said committee with the receiver in part payment of the purchase-price, and/or any distributive share of the proceeds of the sale due thereon, as well as the twenty-five hundred dollars ($2,500.00) in cash deposited with the said receiver by the committee when qualifying as a bidder, all in settlement of such bid, and does hereby relieve the receiver of the obligation to pay to it, the said committee, any portion of the distributive share of the proceeds of sale due upon said bonds thus deposited with the receiver under such bid and confirmation. This transfer is made without warranty whatever. The said Samuel M. Magid does hereby . . obligate himself to comply with said bid and confirmation thereof, or such other or further orders as the court may enter in connection therewith, and agrees to assume the position and obligations of the said committee in and under and into the said bid and confirmation, and agrees to hold the said committee harmless against any and all claims and demands whatsoever in so far as concerns said bid and confirmation."

Then Douglas, on behalf of the committee, filed in the U. S. District Court, in the foreclosure suit, his petition in which he alleged, that on July 1, 1924, on behalf of the bondholders' committee, he purchased the property in dispute under the sale thereof by the court; that the sale had been confirmed; that under the order of confirmation the purchaser at said sale was authorized to assign his purchase and rights; that by authority of the committee

petitioner was authorized to assign said bid, and under said authority had made a valid assignment thereof to Samuel M. Magid; that said bonds had been deposited with the receiver and were then deposited with the clerk of the court, which bonds, according to the decree, were receivable as a part of the purchase-price of said sale, and were deposited in part payment. He prayed that the court approve the assignment of said bid, confirm the deposit of such bonds, relieve petitioner of his obligation, and substitute Magid as bidder. The court passed an order decreeing that Douglas, for the committee, had been duly authorized to make and had made a valid assignment of his bid on the property to Samuel M. Magid, who was substituted for said original bidder, and the original bidders were relieved from their obligations thereon; and directed the receiver, when Magid complied with the bid and paid to the receiver the costs of the court, the expenses of the receivership, the amount due on the receiver's certificates, and deposited in this court such sum as would represent the proportion due the bondholders who have not and may not deposit their bonds, to execute a deed to Magid to the property. At the same time Magid filed in said court his petition in which he alleged that he had become substituted for Douglas and the committee as bidder for the property involved; that he had become the assignee from Douglas in behalf of the committee of $1,098,800 of bonds of the defendant corporation, already deposited in part payment of said bid; that in addition he had become the owner of and had deposited with the receiver bonds totaling $86,900, making a total of $1,185,700 of these bonds deposited with the receiver; that the total outstanding bonds amounted to $1,234,400, which left undeposited with the court the sum of $48,700 of said bonds; that after paying the costs of court, the expenses of the receivership, and the outstanding receiver's certificates, there was left of the total consideration bid for the property the sum of $143,058.97, which is twelve per cent. of the face value of the outstanding bonds, that this percentage of the outstanding bonds amounts to $5772, which he had deposited with the receiver, that by the deposit of said sum and the payments aforesaid, and the assumption of taxes on said property, he had fully complied with the bid of Douglas on behalf of the committee, and having so done and having become the assignee of Douglas for said committee, he was entitled to have a deed made

to him.   He prayed the court to approve said payments and deposit, and direct the receiver to execute to him a good and sufficient deed to this property.   The court passed a decree granting the relief prayed by Magid.   The receiver thereupon executed and delivered to Magid a deed to all of the property bid in by the committee at the receiver's sale.   In payment for said property Magid paid the sum of $54,741.03 in cash, $131,856 being the value of the bonds deposited by petitioners and their associates with the receiver, $2500 furnished by the committee to qualify as bidder, and $10,428, being the value of other bonds deposited by Magid.

Stripped of conclusions of law and fact, the above statement contains the well-pleaded facts set out in the petition.   The petitioners assert that this property is impressed with an implied trust in their favor to the extent of $131,856, which was the value of their bonds so deposited with the receiver and used by Magid in payment therefor, and that Magid holds this property as their trustee to this extent.   They prayed that the property be sold and the proceeds divided in the proportion which the cash paid by Magid for this property bears to the said value of the bonds so deposited by them and their associates with the committee. Under these circumstances did an implied trust arise in favor of the plaintiffs?   Implied trusts arise in the following cases: (1) Whenever the legal title is in one person, and the beneficial interest, arising from the payment of the purchase-money, either wholly or partially, is in another.   (2) Where, from any fraud, one person obtains the title to property which rightly belongs to another.   (3) Where from the nature of the transaction it is manifest that it was the intention of the parties that the person taking the legal title shall have no beneficial interest.   Civil Code (1910), § 3739.   In the first paragraph of this section, the person in whose favor a trust is claimed to result must have paid the purchase-money as his own.   If he merely advances the whole or a part of the purchase-money as a loan, no implied trust arises.   *Johnston* v. *Coney,* 120 *Ga.* 767, 776 (48 S. E. 373).   The second paragraph of this section deals with trusts which arise ex maleficio. Such a trust "occurs whenever a person acquires the legal title to land, or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose,   .   .   or to reconvey it to the grantor, and the like, and,

having thus fraudulently obtained the title, he retains, uses, and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement." *Brown* v. *Doane*, 86 *Ga.* 32 (12 S. E. 179, 11 L. R. A. 381); *Jenkins* v. *Lane*, 154 *Ga.* 454, 477 (115 S. E. 126). The third paragraph of the above section deals with implied trusts which arise where it is manifest from the nature of the transaction that it was the intention of the parties that the person taking the legal title to the property should have no beneficial interest therein. If there is an implied trust under the facts of this case, it must arise either under the first or second paragraph of the above section. The plaintiffs insist that Magid became a substitute to act for them in purchasing this property, that he paid therefor in part with their bonds, and that such part payment was made, not for himself, but for them. On the other hand, Magid insists that under the facts he was not substituted in the place of the committee, and was not to act for or on behalf of the depositing bond-holders, but on the contrary was simply substituted as bidder in place of the committee, with obligations to comply with their bid and to relieve the committee from any and all liability thereunder. He further insists that in consideration of this undertaking on his part the committee assigned to him their bid, the confirmation thereof by the court, and the bonds which had been deposited by the bondholders under the agreement which created the reorganization committee, and that he used these bonds in part payment for this property, not as the property of petitioners, but as his own property. In short, he contends that he became, by virtue of the agreement between him and the committee, the bidder for the property by substitution, that he purchased the same for himself, that he paid for the same in part with these bonds as his own and in cash and other bonds which belonged to him. Under the agreement between him and the committee, Magid clearly became a substituted bidder for the property in the place of the committee. He thereby undertook to comply with all the obligations of the committee under their bid, which included the payment of the $200,000 which the committee agreed under its bid to pay therefor.

It is expressly stipulated in the agreement that Magid could use the deposited bonds or any distributive share of the proceeds of the sale, as well as the $2500 in cash, in part payment of the purchase-price of the property, and in settlement of the bid of the committee, which had been assigned to him. It necessarily follows that when he complied with the bid as such substituted bidder the title to the property was to be made to him, and this was done. There is no provision in the agreement that Magid was to bid in the property for the depositing bondholders, or for himself and the bondholders. There was no provision that he assumed the position and the obligations of the committee as trustee for the bondholders, but he only assumed the position and obligations of the committee as bidder under their bid and the decree of confirmation, and he only agreed to hold the committee harmless against all claims and demands in so far as they concerned said bid and confirmation. Under this agreement, the committee was clothed with full power in the premises, under the agreement with the bondholders by which it was created, to sell, pledge, or make any use of these bonds as they might see fit. They expressly authorized Magid to use these bonds and the cash deposited by the committee with the receiver to make it eligible as bidder, in payment in part for this property. The consideration received by the committee, who was the trustee of the depositing bondholders, and by the bondholders themselves, so far as this agreement discloses, consisted in being relieved from the bid made by the committee on behalf of these bondholders for this property, and from the obligation arising thereunder. The committee was thus relieved from complying with the bid with which they were unable to comply, and from having the property resold at its risk. The bondholders were thus relieved from complying with this bid with which they were unwilling to comply, and from all obligations, if any, growing therefrom by reason of the fact that their committee had bid this property in for them.

Furthermore, under the terms of this agreement, even if we should hold that Magid became a substituted trustee for these bondholders, he acted in complying with this bid, under this theory, not for himself but for these bondholders. Under this theory he assumed this bid of the committee and complied therewith, not for himself, but for these bondholders, not for himself and these

bondholders jointly, but for the bondholders. So when he used his own funds and bonds, together with the bonds which had been deposited by the bondholders with their committee, he did so, under this view of this agreement, not for himself or for himself and these bondholders jointly, but as the trustee substituted in the place of the committee acting for and on behalf of these bondholders. In this view of the case these bondholders and Magid can not be held to have purchased this property jointly and to be holding the same as tenants in common. It follows that petitioners can not proceed on the assumption that they and Magid are joint owners of the property, and have the same partitioned between them on this theory. In this view of the case a court of equity can not partition this property as between Magid and these bondholders as tenants in common. Leaving out of view any trust arising ex maleficio, petitioners, under the first count of the petition, can only proceed upon the theory that Magid as their trustee or agent purchased this property for them, and that when he expended funds of his own in paying therefor he did so for these bondholders, and when he took a deed thereto he did so as trustee for them. In these circumstances petitioners can not treat him and themselves as joint owners of this property, and can not have the same partitioned between them and Magid upon this theory. This being so, they can not, in a court of equity, treat Magid as a tenant in common and compel him to take, in lieu of the funds of his own invested in this property for and on their account, an undivided interest in the property. Before they could have this property partitioned in a court of equity, they would have to do equity, and refund to Magid, or offer to refund to him, before instituting an equitable petition for partition, the money which he had put in this property for and on their account. He who would have equity must do equity. Civil Code (1910), § 4521. This is a favorite maxim of equity. *Duke* v. *Ayers,* 163 *Ga.* 444, 454 (136 S. E. 410).

Did an implied trust arise ex maleficio under the facts of this case? In the second count the petitioners assert that Magid converted their bonds when he used them in payment in part of the purchase-money of this property. Under the agreement between him and the committee, which undertook to act in this matter in behalf of these bondholders, he was expressly authorized to use

these bonds just as he did use them in paying for this property. It is not alleged in the petition that the committee of the bond-holders did not have authority to provide in the agreement between it and Magid that the latter could use these bonds in payment for said property. It follows therefore that when Magid used them in paying for this property, he was authorized to do so under the express provision of the agreement between him and the committee. He thus lawfully used the bonds in paying in part the purchase-price of this property. He did not unlawfully convert these bonds. Ergo there was no implied trust arising ex maleficio. So we reach the conclusion that the petition in this case does not set forth facts which show that Magid holds the legal title to this property in trust for the petitioners and other depositing bondholders. Minder v. Empire etc. Co., 148 Ga. 88 (95 S. E. 961). For this reason, the demurrer to the petition as amended should have been sustained.

3. In the agreement between the committee and Magid, as we have seen, he was expressly authorized to use the bonds deposited with the committee by the bondholders, in part payment of the purchase-price of this property. This agreement does not state in what capacity he was to use these bonds, or whether he was to account therefor to the bondholders, or was to pay them for the value of these bonds. If we treat this use of the bonds by Magid as a loan to him by the holders of these bonds, he would be liable to account to these holders for their value, although, as we have seen, such use of the bonds would not create an implied trust in behalf of these holders. Treating the second count of the petition as seeking to recover from Magid the value of these bonds upon the theory that the use thereof was in effect a loan, then the second count was subject to the ground of demurrer urged against it, that it set forth a new and distinct cause of action. The original peti-tion as amended seeks to set up and have enforced an implied trust. This was one cause of action. To recover their value upon the theory that the use thereof by Magid was in effect a loan from the bondholders to him, and that he was liable to account on this theory for their value, was another and distinct cause of action; and rendered the second count amenable to the ground of demurrer that it set forth a separate and distinct cause of action and one not germane to the cause set out in the original petition. No

amendment adding a new and distinct cause of action shall be allowed unless expressly provided for by law. Civil Code (1910), § 5683. This principle is applicable both to actions at law or in equity. *Roberts* v. *Atlanta Real Estate Co.,* 118 *Ga.* 502, 505 (45 S. E. 308); *Wyche* v. *Cooke,* 156 *Ga.* 246 (2) (119 S. E. 402).

4. The case was tried by the presiding judge without the intervention of a jury. After the hearing a decree was rendered in favor of plaintiffs, by which an implied trust was impressed upon this property in their favor. To this decree Magid excepted. Certain facts appear in the evidence introduced on the trial of the case which are vitally important in determining whether this decree was right. When Douglas for the committee bid in this property for the depositing bondholders, and the same was confirmed by the decree of the U. S. District Court, with the requirement that a cash payment of $50,000 be made upon the property within a given time, the committee notified the depositing bondholders of their action in bidding in the property for them, and of the requirement of this cash payment on the purchase-price bid by the committee. The bondholders wholly ignored the request of the committee to advance the money necessary to make this cash payment and to acquire title for themselves to this property. The committee made diligent efforts to borrow on the property funds sufficient to make this payment. Their efforts failed. They tried in vain to sell the property so as to make this cash payment, and to save, if possible, something for the bondholders. It was in this situation that the committee made the contract with Magid, the terms of which are substantially set out in the second division of this opinion. Contemporaneously with that agreement Magid and the committee entered into another agreement. Under the latter agreement Magid agreed to pay to the committee, contemporaneously with paying the portion of the purchase-price required to be paid in cash under the decree of confirmation, the $2500 which the committee had deposited with the receiver to qualify as bidder. He further agreed that after title to said property had been vested in him he would cause the same to be transferred to a corporation, to be organized under the laws of Georgia, with a capital stock of $500,000, of which amount Magid was to deliver to the committee $25,000 par value, full paid, and non-assessable. The holders of this $25,000 of stock should at all

times have the privilege of naming one director of the corporation. The corporation was to have the right to issue bonds not to exceed $125,000, together with interest and attorney's fees, to be secured by a first deed of trust or mortgage upon the property. Magid agreed to assume and liquidate any obligation of the committee under a certain contract made by it with certain attorneys, and to hold the committee harmless against all claims and against all damages arising therefrom. Under this agreement Magid further undertook to pay the junior receiver's certificates issued by the receiver to the committee or its members. So under this second contract the depositing bondholders were to receive $2500 in cash, the amount deposited by that committee to qualify as bidder on this property, $25,000 capital stock of the corporation to be organized to take over this property, and the other claims above referred to were to be assumed and paid by Magid. This contract was signed by Magid, by his attorneys. There is no contention that his attorneys were not authorized to enter into this contract on his behalf. Furthermore, if they were not, Magid has ratified the same by pleading the same and relying thereon in his defense of this case. Under this agreement it is clear that Magid was not acting, in the purchase of this property, for and on behalf of the depositing bondholders, nor should he be held to be holding the property as an implied trustee for these bondholders. Viewing the transaction in the light of all the facts and circumstances, it can not be held that Magid purchased this property either for or on account of these depositing bondholders, or that he used the bonds deposited by them as their property, or that he converted these bonds in using them in part payment of the purchase-price of this property. It is insisted, however, that Magid has failed to comply with his agreement last referred to, and that it is now impossible for him so to do, by reason of the fact that he has sold a part of this property and can not convey the entire property to the corporation to be organized under the laws of this State with a capital stock of $500,000, of which he was to deliver to these bondholders $25,000 full paid and non-assessable. The failure of Magid to comply with the terms of this contract does not make him an implied trustee of this property for these bondholders. For any breach of the contract Magid would be liable to them in damages; but such breach or failure of performance would not render him

a trustee for the bondholders, so long as this contract remains un-rescinded. Whether the contract is rescindable is not now for decision by this court, for the reason that petitioners do not undertake to have it rescinded, and because of the facts appearing in the record which do not authorize its rescission.

So we are of the opinion that the court below erred in holding that this property was impressed with a trust in behalf of petitioners, and in granting the relief prayed by them.

<em>Judgment reversed. All the Justices concur.</em>