S03A0137. TAYLOR, BEAN & WHITAKER MORTGAGE
CORPORATION et al. v. BROWN.
(583 SE2d 844)

SEARS, Presiding Justice.

Appellee Linda Brown filed this action against appellant Taylor, Bean & Whitaker Mortgage Corporation (hereinafter "TB&W") and appellant Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), seeking, among other things, to cancel a security deed she had executed in favor of the appellants and to enjoin a pending foreclosure sale under the security deed. The trial court entered a default judgment against MERS, but has not entered a judgment granting any damages or relief based on the default. The trial court subsequently granted partial summary judgment to Brown against TB&W and against MERS in the event that MERS obtained a reversal of the default judgment. The summary judgment order canceled the security deed and enjoined the pending foreclosure. TB&W and MERS have now filed this appeal, contending primarily that the trial court erred in canceling the security deed. For the reasons that follow, we affirm in part and reverse in part.

1. On March 25, 2001, TB&W loaned Brown $144,800 for the purchase of a home. The loan was evidenced by a promissory note executed in favor of TB&W and a deed to secure debt executed by Brown in favor of MERS, as grantee. The security deed provided that "MERS is a separate corporation that is acting solely as a nominee for lender (TB&W) and lender's successors and assigns." It further provided that it was given to secure the repayment of the loan in question; that, for this purpose, Brown was conveying the property to MERS; that Brown understood that MERS held legal title to the property; and that MERS, "as nominee for lender and lender's successors and assigns," had the right to foreclose and sell the property.[1]

---

[1] MERS, which began operating in 1997, is a private company created by the mortgage

After the closing, TB&W apparently sold the loan in the secondary market. In August 2001, Brown stopped making her loan payments. MERS published a notice of a foreclosure sale, and MERS stated that it was acting on behalf of TB&W.

Brown subsequently brought this action against numerous defendants, including TB&W and MERS. Her complaint sought, among other things, to enjoin the foreclosure sale, but it did not seek to cancel the security deed. TB&W filed a timely answer, and stated that it had sold Brown's loan and was not the current holder of the promissory note, and it raised the defense that Brown had failed to join the current holder of the note as an indispensable party.

A hearing on Brown's request for an interlocutory injunction was held a few weeks after the complaint was filed, and at that hearing, MERS's attorney stated that TB&W had sold the loan in question to the Federal National Mortgage Association ("Fannie Mae"), and TB&W's attorney also stated that it had sold the loan in the secondary market. After the interlocutory injunction hearing, Brown amended her complaint to add a quiet title claim pursuant to which she sought cancellation of the security deed.[2]

Because MERS never filed a timely answer, Brown moved for default judgment against MERS and moved for partial summary judgment against both TB&W and MERS. The trial court entered a default judgment against MERS, but did not grant any relief on that judgment. It also granted partial summary judgment against TB&W, as well as against MERS in the event the default judgment was reversed. The partial summary judgment cancelled the security deed and enjoined the foreclosure sale.

2. OCGA § 23-1-10 provides that "[h]e who would have equity must do equity." This maxim has been described as a favorite maxim

---

banking industry for the purpose of establishing a centralized, electronic system for registering the assignments and sales of residential mortgages, with the goal being the elimination of costly paper work every time a mortgage loan is sold. See Slesinger & McLaughlin, "Mortgage Electronic Registration System," 31 Idaho L. Rev. 805 (1995); Herstein, "Real Property," 44 Wayne L. Rev. 1019, 1104 (1998); "MERS Registers 15 Millionth Loan," Special Report: Mortgage Servicing, Vol. 27, No. 33, p. 22, National Mortgage News, May 12, 2003; "MERS: Every Commercial Loan Needs a MOM; Commercial; Mortgage Electronic Registration Systems, Inc.; MERS," Mortgage Banking (ISSN: 0730-0212), No. 4, Vol. 63, p. 79 (January 1, 2003). Under the MERS system, the borrower and the original lender name MERS as the grantee of any instrument designed to secure the mortgage loan. The security instrument is then recorded in the local land records, and the original lender registers the original loan on MERS's electronic system. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. Id. MERS currently has over 15 million loans registered, and is registering over 40% of all mortgage loans originating in the United States. National Mortgage News, May 12, 2003, supra.

[2] We note that venue over the quiet title action was in Clinch County, where Ms. Brown filed her initial and amended complaints. See *Smith v. Ga. Kaolin Co.*, 264 Ga. 755 (449 SE2d 85) (1994).

of equity, as well as one of its oldest, and it applies to all types of cases.[3] Pursuant to OCGA § 23-1-10, "[i]t has frequently been held that a plaintiff can not come into equity without first paying or tendering any amount admitted to be due,"[4] and that "[e]quity will not decree the cancellation of an instrument where anything of value has been received until repayment is either made or tendered, or the defendant has stated that, should a tender be made, it would be refused."[5] Thus, this Court has held that a plaintiff may not use equity to obtain the cancellation of a security deed or promissory note if the plaintiff has not paid the note or tendered payment of the note.[6]

In the present case, Brown admitted in her complaint and in her testimony at a hearing before the trial court that she had not paid off the promissory note secured by the security deed.[7] Despite these admissions, the trial court ruled that Brown was entitled to the equitable remedy of cancellation of that deed because the original lender, TB&W, sold the original loan in the secondary market and is therefore not owed any money at the present time;[8] because MERS, as the nominee of TB&W and its assigns, is not owed any money under the note; and because there was no evidence of any other entity that is owed money under the note. We disagree with this ruling. OCGA § 23-1-10 puts an affirmative obligation on a plaintiff to do equity before she may seek equitable relief such as the cancellation of a security deed. We thus conclude that, because Brown has not paid off the promissory note, she has not done equity and was not entitled to the equitable remedy of cancellation of the security deed.[9]

Moreover, this conclusion is consistent with OCGA § 44-14-60, which provides that a security deed passes title to the property in question "until the debt or debts which the conveyance was made to secure shall be fully paid."[10] In this case, because the debt that the

---

[3] *Holland Elec. &c. Co. v. Holland Heating &c.*, 259 Ga. 256, 257 (379 SE2d 404) (1989); *Magid v. Byrd*, 164 Ga. 609, 621 (139 SE 61) (1927).

[4] *Pass v. Pass*, 195 Ga. 155, 160 (23 SE2d 697) (1942).

[5] *Wilson v. McAtter*, 206 Ga. 835 (59 SE2d 252) (1950).

[6] *Coile v. Finance Co. of America*, 221 Ga. 584, 585 (146 SE2d 304) (1965); *Wilson*, 206 Ga. at 835.

[7] In her testimony, Brown stated that she had paid only several months of the 30-year note.

[8] In this regard, Brown contends that, because TB&W is not presently owed any money under the promissory note, it does not have standing to pursue this appeal. We disagree, as Brown sought and obtained affirmative relief by way of the grant of partial summary judgment against TB&W from the trial court. Brown thus cannot now complain that TB&W does not have standing.

[9] Although there are certain exceptions to the rule set forth in OCGA § 23-1-10, see Pindar, Georgia Real Estate Law and Procedure § 20-65, at 304 (5th ed. 1998), we conclude that, on the present record, they are not applicable to this case.

[10] See Pindar, Georgia Real Estate Law and Procedure § 21-53, at 378 (5th ed. 1998). See also *Decatur Fed. Sav. &c. Assn. v. Gibson*, 268 Ga. 362, 364 (489 SE2d 820) (1997) (A

conveyance was made to secure has not been fully paid, Brown was not entitled to cancellation of the security deed.

3. TB&W stated in its answer that it had sold Brown's loan and specifically raised the defense that Brown had failed to join the current holder of the note as an indispensable party.[11] In addition, at the interlocutory injunction hearing, MERS's attorneys represented to the trial court that Fannie Mae had purchased the promissory note from TB&W. The appellants thus adequately raised the issue that Brown failed to join an indispensable party,[12] and it appears that Fannie Mae, as an assignee of the promissory note, was an indispensable party to the litigation.[13] Because the appellants adequately raised the issue of the failure to join an indispensable party; because Brown, as the movant for summary judgment, never pierced this aspect of TB&W's verified pleadings;[14] and because a trial court may not cancel a security deed "unless [the plaintiff] join[s] as defendants all persons who would be affected adversely by the cancellation,"[15] the trial court erred in ordering the cancellation of the security deed before resolving whether Brown had failed to join an indispensable party.[16]

4. Brown contends that she was entitled to cancellation of the security deed against MERS on summary judgment, as that relief was the logical conclusion of the default judgment against MERS. A default judgment entitles a plaintiff to relief that is authorized by her complaint.[17] In default judgment cases in which equitable relief

---

"security deed stands alone so long as the underlying debt remains," and the grantee of the deed "is not obligated to satisfy it until the debt is paid.").

[11] See OCGA § 9-11-12 (b) (7); Gregory, Georgia Civil Practice § 4-3, at 357-358 (2nd ed. 1997).

[12] Gregory, at 357-358.

[13] See *Coe v. Greenville Credit &c. Co.*, 164 Ga. App. 521, 522-523 (298 SE2d 36) (1982); *Dime Savings Bank v. Sandy Springs Assoc.*, 261 Ga. 485, 486 (405 SE2d 491) (1991).

[14] See *Bryan v. Bryan*, 248 Ga. 312, 313 (282 SE2d 892) (1981).

[15] *Dime Savings Bank*, 261 Ga. at 486.

[16] This conclusion is supported by OCGA § 9-11-19 (c), which provides that a plaintiff has the burden to include in her complaint the name of any indispensable party, if known to the plaintiff, who is not joined and to state the reasons why that party is not joined. Here, at the interlocutory injunction hearing, Brown learned the name of the party (Fannie Mae) who had allegedly purchased the original loan from TB&W. After that hearing, Brown filed an amended complaint, seeking, for the first time, to cancel the security deed. Although Brown did not "know" the name of Fannie Mae by proof admissible in a court of law, § 9-11-19 (c) does not specify that such proof is the only way to acquire "knowledge" of an indispensable party. Moreover, given that one of the purposes of the rule is to assist the court in bringing before it all parties who may be affected by its judgment, see Gregory, supra, at 358, we conclude that Brown had sufficient knowledge of Fannie Mae such that she had an obligation to comply with § 9-11-19 (c). Despite knowing the name of Fannie Mae, in her amended complaint, Brown did not state Fannie Mae's name or the reasons why she had not joined Fannie Mae as a party.

[17] See OCGA § 9-11-55 (a) (After expiration of 15-day period for opening default, plaintiff is entitled to judgment "as if every item and paragraph of the complaint . . . were sup-

is sought, "a determination must be first made that, admitting every allegation in the petition as true, the plaintiff is entitled to the [equitable] relief sought. This presents a question of law for the court."[18] Here, Brown's complaint admitted that she had not paid off the promissory note, and thus showed that she was not entitled to the relief of cancellation of the security deed.[19]

5. We note that neither TB&W nor MERS enumerates as error that the trial court erred in finding in its order granting partial summary judgment that Brown did not timely receive the notice of foreclosure required by the deed. Thus, to the extent the trial court granted partial summary judgment enjoining the pending foreclosure action based on that finding, we do not disturb the trial court's judgment. However, to the extent that the trial court's order enjoined any future foreclosure actions based on future defaults on the promissory note, the trial court's order is reversed. Moreover, to the extent the trial court enjoined the pending foreclosure based on its order cancelling the security deed, we reverse based on our ruling that the trial court erred in ordering that cancellation. Finally, because we construe the trial court's grant of partial summary judgment as enjoining the foreclosure sale based solely on the foregoing two grounds, the trial court, on remand, may address issues such as the appropriate relief to be granted against MERS on the default judgment and such as whether MERS, as a nominee for the original lender and its successors, has the power to foreclose on an existing security deed either with or without the participation of the existing note holder.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED JUNE 30, 2003 —
RECONSIDERATION DENIED JULY 29, 2003.

*McKenna, Long & Aldridge, Jeffrey W. Cavender, Sarah McCormack, McCurdy & Candler, Donald C. Suessmith, Jr.*, for appellants.
*Berrien L. Sutton, James M. Walters, Guyton O. Terry*, for appellees.

---

ported by proper evidence."); Gregory, supra, § 7-2 (A), at 557.

[18] *Times Journal, Inc. v. Jonquil Broadcasting Co.*, 226 Ga. 673, 676 (177 SE2d 64) (1970). Accord *Wallace v. Lewis*, 253 Ga. App. 268, 269-270 (558 SE2d 810) (2002).

[19] See Division 2 of this opinion.