Bobby S. **WALKER** and Martha Walker, Plaintiffs,

v.

**JPMORGAN CHASE BANK, N.A., Defendant.**

**Civil Action File No. 3:13–cv–133–TCB.**

United States District Court, N.D. Georgia, Newnan Division.

Dec. 18, 2013.

■■■■■■■■■■■■■■■■■■■

Frank J. Klosik, Jr., Thomas Richard Mondelli, Greer Klosik Daugherty & Swank, Atlanta, GA, for Plaintiffs.

Craig Phillip Silverman, Stephen Vincent Kern, Kitchens Kelley Gaynes, P.C., Atlanta, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This wrongful-foreclosure case is before the Court on JPMorgan Chase Bank N.A.'s motion for summary judgment [8].

### I. Background

In late 2001 Bobby Walker borrowed $239,000 to purchase residential property in Carrollton, Georgia. At that time, Mr. Walker executed a security deed that conveyed legal title to the property to Washington Mutual Bank, F.A. (WaMu), thereby securing his obligations under the promissory note. Mrs. Walker was not a signatory to this security deed.

In September 2008 WaMu failed, and the FDIC was appointed receiver. The FDIC assigned WaMu's interest in the security deed to JPMorgan in November 2012. JPMorgan recorded the assignment later that month.

From 2001 to 2012 the Walkers made timely payments on their mortgage, first to WaMu then to JPMorgan. But in the summer of 2012 they became concerned about their ability to continue to do so given the financial effects of the economic downturn. As a result, Mrs. Walker phoned JPMorgan on June 29, 2012 to discuss the steps required to apply for a loan modification. According to her, JPMorgan's representative said that they were ineligible: loan modifications were only available to customers who were at least three months behind on their payments. Over the next four months, JPMorgan sent Mr. Walker three letters explaining what documents were required to complete a loan-modification application.

In an attempt to become eligible, Mr. Walker stopped making his mortgage payments. The Walkers also tried to complete a loan-modification application, submitting (and in some cases resubmitting) documents for JPMorgan's review. Yet no loan modification was ever granted.

On August 28, 2012, JPMorgan notified Mr. Walker that his failure to make payments as they came due constituted default under the terms of the security deed and warned him that continued default could result in acceleration of his debt and foreclosure. On November 15, 2012, the bank again notified Mr. Walker about the status of his loan and advised him that the bank had not received a completed loan-modification application. According to the bank, a modification application was never completed.

On December 28, 2012, JPMorgan's foreclosure counsel sent Mr. Walker a letter—by certified mail with return receipt requested and first class mail—notifying him that his loan had been accelerated, advising him of the amount due and his rights under the Fair Debt Collection Practices Act, and explaining that a foreclosure sale would occur on February 5, 2013. The certified letter was delivered to the property on January 7, 2013 and apparently signed for by Mrs. Walker; the letter sent by first class mail was returned as undeliverable.

In her affidavit, Mrs. Walker states that the Walkers first learned of JPMorgan's plans to sell the Carrollton property on February 4, 2013—the day before the scheduled foreclosure sale. She took steps to stop the foreclosure sale and thought that she had succeeded, based on a February 5 call between herself and representatives of JPMorgan and the federal government's Home Affordable Modification Program (HAMP). During that call, she says that she was told that JPMorgan "erroneously failed to send certain loan modification documents to us for consideration of a HAMP modification and that the foreclosure sale would be postponed."

Despite this purported agreement, the foreclosure sale proceeded as planned. The property was purchased by T & H Mitchell Properties, LLC. As for the foreclosure letter signed for on January 7, Mrs. Walker disputes in her affidavit the genuineness of her purported signature on the return receipt.

The Walkers filed this wrongful-foreclosure action in the Superior Court of Carroll County, Georgia; it was removed to this Court. The Walkers challenge the nonjudicial foreclosure of the security deed and sale of the property to T & H Mitchell. They assert claims for (1) breach of contract, including breach of the implied duty of good faith and fair dealing, (2) wrongful foreclosure, and (3) violations of Georgia's Fair Business Practices Act; and they seek (4) a declaratory judgment that JPMorgan lacks standing to enforce the security deed, along with (5) an order quieting title to the property.

JPMorgan has moved for summary judgment on all of the Walkers' claims. Its motion will be granted.

## II. Legal Standard

Summary judgment is proper when no genuine issue about any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. Discussion

### A. Summary Judgment Before the Close of Discovery

The Walkers contend that JPMorgan's motion for summary judgment is premature because the discovery period has yet

to close. In their view, because JPMorgan chose not to file a motion to dismiss under Federal Rule of Civil Procedure 12, it "abandoned the opportunity to seek an early resolution of this case." Indeed, they go further, suggesting that "the undisputed case law of the Eleventh Circuit requires a denial or a suspension of [JPMorgan's] Motion until such time as discovery is completed." As support, they cite *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870–71 (11th Cir.1988); *WSB–TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir.1988); and *Jones v. City of Columbus*, 120 F.3d 248, 253 (11th Cir.1997).

■ The Walkers overstate the holdings of *Snook, Lee* and *Jones.* "The law in this circuit is clear: the party opposing a motion for summary judgment should be given an adequate opportunity to complete discovery prior to consideration of the motion." *Jones*, 120 F.3d at 253. But "an adequate opportunity to complete discovery" does not mean that a motion for summary judgment made before the close of discovery is per se premature. *See, e.g., Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir.1989) ("We cannot … adopt the blanket prohibition on the granting of summary judgment motions before discovery that appellant now urges on us."). To the contrary, absent a court order or an applicable local rule, "a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery." FED. R. CIV. P. 56(b) (emphasis added). The Walkers' reading of Eleventh Circuit precedent would vitiate not only the "at any time" language of Rule 56(b) but also the need for Rule 56(d) altogether—an approach that the circuit has specifically considered and rejected. *See Reflectone*, 862 F.2d at 844 ("The presence of [R]ule 56(f) [now, Rule 56(d) ] shows that appellant's argu-

ment that it is *per se* improper to grant summary judgment without providing the opponent an opportunity to conduct discovery is without merit.").

■ While the Court should not grant summary judgment if additional discovery would aid the nonmoving party's opposition, it is the Walkers, as the nonmoving parties, who are responsible for bringing any outstanding pertinent discovery to the Court's attention. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir.1990). Yet nowhere in their brief do they suggest how additional discovery would help them oppose JPMorgan's motion for summary judgment. *See FEC v. Reform Party of the U.S.*, 479 F.3d 1302, 1309 (11th Cir.2007) (affirming grant of summary judgment where nonmoving party failed to demonstrate that additional discovery would have unearthed genuine issues of fact). Thus, neither the Eleventh Circuit's caselaw nor the facts of this case require the Court to delay ruling on JPMorgan's motion for summary judgment.

### B. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

■ The Walkers' breach-of-contract claim hinges on JPMorgan's alleged failure to comply with paragraph 22 of the security deed; that is, it allegedly failed to provide notice of default and the right to cure. But the August 28, 2012 letter that JPMorgan mailed to Mr. Walker did precisely that, and under paragraph 15 of the security deed, simply mailing this letter constituted giving notice. Moreover, in their opposition brief the Walkers do not contend that this letter did not meet the requirements of paragraph 22. As a result, JPMorgan's alleged breach is impossible.

In Georgia, every contract implies a covenant of good faith and fair dealing. *Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc.*, 291 Ga.App. 808, 662 S.E.2d 745, 748 (2008). But this covenant does not provide an independent basis for liability; instead, it "becomes a part of the provisions of the contract ... [and] cannot be breached apart from the contract provision it modifies." *Id.* So while the Walkers allege that JPMorgan acted in bad faith or unfairly during the loan-modification or foreclosure process, no claim for the breach of the covenant of good faith and fair dealing lies unless JPMorgan's actions are connected to the breach of an express term of the security deed. And they are not.

JPMorgan is thus entitled to summary judgment on these claims.

## C. Wrongful Foreclosure

In Georgia, a plaintiff asserting a claim for wrongful foreclosure must establish a legal duty owed to him by the foreclosing party, a breach of that duty, a causal connection between the foreclosing party's breach and the plaintiff's injury, and damages. *Gregorakos v. Wells Fargo Nat'l Ass'n*, 285 Ga.App. 744, 647 S.E.2d 289, 292 (2007).

The Walkers assert that JPMorgan wrongfully foreclosed on their property because it failed to satisfy the notice-of-sale requirements in O.C.G.A. § 44–14–162.2. In their view, because the statute requires that the notice "be sent by registered or certified mail or statutory overnight delivery, return receipt requested," it would be "absurd" to find "that a foreclosing entity could initiate a foreclosure sale without providing proof that notice did in fact reach its intended recipient." Additionally, they contend that they never received notice of the impending foreclosure and

that the purported signature of Mrs. Walker on the return receipt of the letter sent by certified mail and signed January 7, 2013 is a forgery.

To be sure, the foreclosing party cannot merely send a notice but rather must "correctly address[ ][it] to the grantor of the security deed in accordance with the provisions of O.C.G.A. § 44–14–162.2" which includes sending it at least thirty days before the proposed foreclosure sale and in the manner proscribed by the statute. *Parks v. Bank of N.Y.*, 279 Ga. 418, 614 S.E.2d 63, 65 (2005). When, as here, these steps are followed, "the actual receipt, or want of receipt, by the grantor is immaterial." *Id.* Indeed, the *Parks* court reached this conclusion even though the plaintiff alleged that "someone unknown to her signed the certified letter receipt." *Id.* at 64 n. 2. Thus, whether Mrs. Walker actually signed the return receipt is a rabbit trail down which the Court declines to go. JPMorgan complied with the letter of the notice statute, and under *Parks* nothing else is required. Accordingly, it is entitled to summary judgment on the Walkers' wrongful-foreclosure claim.

## D. Georgia Fair Business Practices Act

The Walkers allege that during the foreclosure process JPMorgan engaged in unfair or deceptive practices in violation of the Georgia Fair Business Practices Act (FBPA). JPMorgan responds by pointing to decisions of this Court holding that private mortgage transactions are not subject to the FBPA, which applies only to unregulated areas of activity, because *mortgages are subject to both state and federal agency regulation. See, e.g., Yates v. GMAC Mortg. LLC,* No. 1:10–cv–2546–RWS, 2010 WL 5316550, at *2–3 (N.D.Ga. Dec. 17, 2010). The Walkers reply that these cases are inapposite

because their claim involves the *foreclosure process,* which unlike residential mortgage transactions, is unregulated by either a state or federal agency.

Here, ruling on JPMorgan's motion for summary judgment does not require deciding whether allegedly unfair or deceptive practices in connection with a foreclosure proceeding can give rise to an FBPA claim under Georgia law. This is because the FBPA provides that a plaintiff who fails to deliver to the defendant a written demand for relief at least thirty days prior to filing suit is barred from recovering under the Act. O.C.G.A. § 10–1–399(b). The Walkers have not provided any proof or even alleged that they notified JPMorgan of their intent to file for relief under the FBPA. Thus, their claim fails at a matter of law, and JPMorgan is entitled to summary judgment. *See Brown Realty Assocs., Inc. v. Thomas,* 193 Ga.App. 847, 389 S.E.2d 505, 510 (1989) (assuming that the FBPA applied to a "foreclosure fraud" claim and affirming trial court's entry of a directed verdict in favor of defendant, citing plaintiff's failure to timely deliver written notice).

### E. Declaratory Judgment

■ The Walkers seek a declaratory judgment that JPMorgan lacked any interest in the security deed and thus lacked standing or authority to exercise the power of sale on February 5, 2013. According to their brief, they are entitled to declaratory relief for statutory and common-law violations JPMorgan allegedly committed.

The Court disagrees. First, JPMorgan unquestionably had full authority to enforce the security deed, including through the power of sale, as evidenced by its recording of the assignment from WaMu in November 2012. Second, no statutory or common-law allegations against JPMorgan remain. Thus, JPMorgan is entitled

to summary judgment on the Walkers' request for declaratory relief.

### F. Quiet Title

■ The Walkers seek equitable relief quieting title to the property. *See* O.C.G.A. § 23–3–40. One of the oldest and most favored maxims of equity is, "He who would have equity must do equity." *Id.* § 23–1–10. And the Walkers have not done equity. Specifically, they have not repaid their note in full. The Georgia Supreme Court has held that "a plaintiff may not use equity to obtain the cancellation of a security deed or promissory note if the plaintiff has not paid the note or tendered payment of the note." *Taylor, Bean & Whitaker Mortg. Corp. v. Brown,* 276 Ga. 848, 583 S.E.2d 844, 846 (2003). Thus, JPMorgan is entitled to summary judgment on the Walkers' quiet-title claim.

### G. The Walkers' Remaining Issues of Disputed Fact

The Walkers contend that summary judgment is inappropriate because the following facts remain in dispute:

1. Whether [JPMorgan's] representatives induced [them] to stop paying their mortgage in order to become eligible for a loan modification;

2. Whether [the Walkers] complied with the terms of [JPMorgan's] loan modification program; [and]

3. Whether [JPMorgan's] statements to [Mrs.] Walker on February 5, 2013 that the foreclosure sale was going to be stopped were knowingly or negligently false.

The Court disagrees. These allegedly disputed facts are immaterial to the causes of action in the Walkers' complaint. In their opposition brief, the Walkers assert that they are "now investigating whether there is a basis for claims of fraud or negligent

misrepresentation under Georgia law that could be alleged in an amended complaint." Even so, this provides insufficient reason to delay ruling on JPMorgan's motion for summary judgment.

At bottom, there is no genuine dispute that

1. JPMorgan had the authority to enforce the security deed, including by nonjudicial foreclosure;

2. Mr. Walker was in default under the terms of the security deed; and

3. JPMorgan provided sufficient and timely notices under both the security deed and Georgia law.

In this case, this is enough to justify granting JPMorgan's motion for summary judgment.

## IV. Conclusion

JPMorgan's motion for summary judgment [8] is GRANTED. The Clerk is DIRECTED to close this case.