**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A1234. HAMILTON STATE BANK v. KELLY CAPITAL INVESTMENTS, LLC.

A15A1293. KELLY CAPITAL INVESTMENTS, LLC et al. v. HAMILTON STATE BANK.

RAY, Judge.

This case involves a loan (the "Loan") made by First State Bank ("First State") to Kelly Capital Investments, LLC ("Kelly Capital") in 2010 to acquire and develop real estate in Henry County. The Loan was guaranteed by Robert D. Collins, William M. Collins, Curtis D. Collins III, Robbie L. Moore, Jr. and Collins & Associates, LLP (collectively, the "Guarantors"). The promissory note evidencing the loan (the "Note") went into default in 2011, and First State entered into a modification and forbearance agreement with Kelly Capital and the Guarantors (collectively, the "Borrowers") to cure the default and to forbear First State from enforcing its rights

under the promissory note at that time (the "Forbearance Agreement"). First State was closed by the Georgia Department of Banking and Finance, and the Federal Deposit Insurance Corporation was appointed as receiver for First State. Appellant Hamilton State Bank ("Hamilton State") then purchased the Note and all the rights, title, and interest in the loan documents. The Note again fell into default, leading to the Hamilton State filing the instant suit against the Borrowers to recover under the terms of the Note and guaranties. The Borrowers each filed an answer and asserted counterclaims. Kelly Capital asserted a claim against Hamilton State for reformation, and the Guarantors asserted counterclaims for fraudulent inducement, breach of the duty of good faith and fair dealing, declaratory judgment, specific performance, reformation and breach of contract.

After several hearings , the trial court entered a final order, ruling on all the parties' outstanding motions in this case, including: Hamilton State's motion for judgment on the pleadings as to its claims under the Note and guaranties; Hamilton State's motion for summary judgment; the Borrowers' motion to strike portions of the affidavit in support of Hamilton State's motion for summary judgment; Hamilton State's motion to dismiss the Borrowers' counterclaims; and the Borrowers' motion for partial summary judgment. In the final order, the trial court also granted Hamilton

State's motion for summary judgment as to its claims to recover under the Note from Kelly Capital, but denied summary judgment as to its claims to recover from the Guarantors. The trial court granted the Borrowers' motion for partial summary judgment on the Borrowers' counterclaims for reformation and the Guarantors' counterclaims for breach of contract and specific performance.

The parties each appeal from the trial court's judgment, and these cross-appeals are consolidated for purposes of our review. In Case No. A15A1234, Hamilton State argues that the trial court erred in granting summary judgment to the Borrowers on their counterclaims. In doing so, Hamilton State argues that the trial court erred in finding that the parties to the Forbearance Agreement intended that the Guarantors would be released from their guaranty obligations upon the payment of certain interest and taxes, erred in failing to enforce the terms of the Forbearance Agreement, erred in finding that the terms of the Forbearance Agreement did not bar the Guarantors' claim of mutual mistake, and erred in holding that the Forbearance Agreement could be reformed against Hamilton State since it was, allegedly, a bona fide purchaser of the Note for value without notice. In Case No. A15A1293, the Borrowers argue that the trial court erred in granting Hamilton State's summary judgment motion against Kelly Capital under the Note and in awarding attorney fees

3

under OCGA § 13-1-11. They also argue that the trial court erred in denying their motion to strike certain portions of an affidavit in support of Hamilton State's motion for summary judgment. They further contend, in the event they are not entitled to reformation, that the trial court erred in rejecting the Guarantors' argument that they were released by the express terms of the Forbearance Agreement.

On appeal from the grant or denial of a motion for summary judgment, this Court applies a de novo review of the evidence, construed in the light most favorable to the non-moving party, to determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the moving party is entitled to judgment as a matter of law. *Coffield v. Allstate Ins. Co.*, 274 Ga. App. 573, 573 (618 SE2d 180) (2005).

The original principal amount of the Loan was $11,540,050.34. The Note called for semi-annual interest payments to be made beginning on July 1, 2011. Payment in full of all outstanding principal and interest was due on or before the maturity date of July 1, 2013. On July 1, 2011, Kelly Capital failed to make the first semi-annual interest payment, and the Note went into default. Kelly Capital also failed to pay county ad valorem taxes on the collateral securing the Note, which served as an additional default under the Note.

4

Kelly Capital and the Guarantors then entered into the Forbearance Agreement. The Forbearance Agreement stated that First State would "forbear on a short term basis from exercising its rights and remedies to proceed against (i) the Collateral . . . and (ii) Guarantors," and it agreed to modify the interest rate and "to release the Guarantors from the Guaranty upon the conditions that [Kelly Capital] and Guarantors cure the Existing Default upon the execution of this Agreement, and that no other default occurs under the terms of the Loan Documents[.]" The Forbearance Agreement defined "Existing Default" as the aforementioned "failure to pay sums due on the Interest Payment Date and the failure to pay county property taxes[,]" and it defined "Loan Documents" as "the Note, the Security Deed, the Guaranty and all other documents evidencing, guaranteeing or securing the Loan[.]"

Section 3.1 of the Forbearance Agreement provided the following:

Provided that no Forbearance Default[1] occurs, and that [Kelly Capital] cures the Existing Default by remitting payment of the Interest originally due on July 1, 2011, and by remitting the outstanding county property

---

[1] "Forbearance Default" is defined in Section §1.2 as "(a) the occurrence of any default or event of default other than the Existing Default under the terms of the Loan Documents; (b) the failure of [Kelly Capital] or Guarantors to comply with any term, condition or covenant set forth in this Agreement; . . . (d) the filing of any petition (voluntary or involuntary) under . . . insolvency or bankruptcy laws . . . or (e) [First State] in good faith feels insecure.

taxes, simultaneously with the execution of this Agreement, [First State] hereby agrees to refrain through the Maturity Date from exercising any of its their [sic] rights and remedies under the Note or any of the other Loan Documents that may exist by virtue of the Existing Default. If [Kelly Capital] makes all payments required under the Loan Documents, and [Kelly Capital] complies with all other terms, covenants and conditions set forth in this Agreement, the Lender agrees that the Existing Default shall be deemed waived.

Section 3.3 stated that:

Provided that [Kelly Capital] cures the Existing Default as stated in paragraph 3.1 above, and that no Forbearance Default occurs, and that [Kelly Capital] and Guarantors make all payments required under the Loan Documents and comply with all other terms, covenants and conditions set forth in this Agreement, the Lender agrees that it shall release the Guarantors from the Guaranty on the Maturity Date.

On January 20, 2012, First State was closed by the Georgia Department of Banking and Finance, and the Federal Deposit Insurance Corporation was appointed as receiver. Hamilton State then purchased certain assets of First State from the FDIC, including all of First State's rights, title, and interest in and to the Note, the Guaranties and all related loan documents, including the Forbearance Agreement.

On July 1, 2013, the Note matured, and Kelly Capital failed to tender payment on all outstanding amounts due and owing under the Note. Hamilton State then initiated the underlying action to recover the amount due under the Note and guaranties. Borrowers answered and asserted that Hamilton State was barred from any recovery from the Guarantors by virtue of release under the Forbearance Agreement. The Guarantors also counterclaimed for, inter alia, reformation of the Forbearance Agreement, breach of contract, and specific performance.

The Borrowers moved for partial summary judgment as to several of their counterclaims. They filed the affidavit of Robbie L. Moore, Jr., one of the Guarantors, in support of that motion. In his affidavit, Moore averred that the Guarantors agreed to cure the default on the Note on August 31, 2011, by paying the overdue interest payment and outstanding ad valorem taxes "in exchange for an agreement by First State to release me and the other Guarantors from our guaranties of [Kelly Capital's] obligations[.]"

Before the trial court, the Guarantors argued that the plain terms of the Forbearance Agreement intended to release the Guarantors from their liability under the guaranties, or in the alternative, that the parties were mutually mistaken with regard to the terms of the Forbearance Agreement and that the parties meant to

7

provide in the Forbearance Agreement that Guarantors would be released from the guaranty obligations upon the payment of the then-owed outstanding interest and ad valorem tax obligations.

*Case No. A15A1234*

In Case No. A15A1234, Hamilton State appeals from the trial court's order denying its motion to dismiss the counterclaims for specific performance, reformation, and breach of contract. It also appeals from the trial court's order granting Borrowers' motion for summary judgment as to those counterclaims and denying Hamilton State's motion for summary judgment as to the Guarantors. As discussed herein, we affirm in part and reverse in part.

In ruling on those motions, the trial court found that "the Forbearance Agreement is unambiguous and nothing prevented the Guarantors from reading it prior to signing it[,]" but it concluded that "[t]he Forbearance Agreement . . . does not reflect the intent of the parties and is the product of mutual mistake between Kelly, the Guarantors, and First State Bank. Under Georgia Law, mutual mistake is grounds for reformation of a contract." Accordingly, the trial court concluded that the Forbearance Agreement could be reformed under the doctrine of mutual mistake. The trial court also ruled that the Hamilton State was not a bona fide purchaser for value

8

without notice and, thus, that the Guarantors were not barred from receiving such equitable relief.

1. When construing a contract such as the Forbearance Agreement,

> [t]he cardinal rule . . . is to ascertain the parties' intent and where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. Further, to determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred. Absent an ambiguity that cannot be resolved by the rules of construction, the interpretation of contractual terms is a question of law for the court.

(Footnotes and punctuation omitted.) *Calhoun, GA NG, LLC v. Century Bank of Ga.*, 320 Ga. App. 472, 474-475 (1) (740 SE2d 210) (2013). A contract contains an ambiguity "when the language used may be fairly understood in more ways than one." (Citations omitted.) *South Point Retail Partners, LLC v. N. American Props. Atlanta, Ltd.*, 304 Ga. App. 419, 422 (1) (696 SE2d 136) (2010).

(a) We find that the language of the Forbearance Agreement clearly and unambiguously stated that the Guarantors were not to be released from their guaranty liability under the Note unless and until *all* payments were made under the Note, and that the terms of the original Note and Guaranties are still valid. In Section 2 of the

9

Forbearance Agreement, Kelly Capital and the Guarantors acknowledged the Existing Default, confirmed the amount due and owing, and confirmed that they had no defenses to liability for the outstanding indebtedness. The Forbearance Agreement further stated that the parties entered into the contract "pursuant to which [First State] will agree to release the Guarantors from the Guaranty upon the conditions that [Kelly Capital] and Guarantors cure the Existing Default upon the execution of this Agreement, and *that no other default occurs under the terms of the Loan Documents* [including the Note, the Security Deed and all other documents evidencing, guaranteeing or securing the Loan]." (emphasis supplied).

As discussed, supra, Section 3.1 and 3.3 repeatedly stated that the Borrowers must cure the Existing Default by paying the outstanding interest and ad valorem taxes *and also* make all payments required under the Loan Documents for the Guarantors to be released from their Guaranties upon maturity.

The following sections of the Forbearance Agreement further unambiguously confirmed that the parties did not intend to release the Guarantors from their liability under the Loan Documents. Section 5.4 of the Forbearance Agreement again stated that the Borrowers shall comply with all terms of the Loan Documents, which required the payment in full of all outstanding principal and interest on or before the

maturity date. Section 7.4 stated that the terms of the Loan Documents remained unchanged, remained in full force and effect and are "hereby confirmed and ratified." Sections 7.6 and 7.11 again reaffirmed every obligation, condition, and provision set forth in the Loan Documents. Section 7.5 reiterated that the agreement shall not be deemed a satisfaction, novation, or release of any of the Loan Documents or, "except as expressly provided herein, a waiver by [First State] of any of its rights and remedies under any of the Loan Documents[.]"

Further, Section 7.7 acknowledged that each party to the agreement was represented by their own counsel in executing the document. Section 7.8 provided an integration clause stating that the Forbearance Agreement "superced[ed] all other discussions, promises, representations, warranties, agreements and understandings between the parties with respect thereto."

Construing all these provisions together, we find that the unambiguous terms of the Forbearance Agreement provided that its purpose was to provide Borrowers with an opportunity to cure the Existing Default without First State beginning the collection process on the Note, not to provide a waiver to the Guarantors from any

11

additional liability they may have under the Loan Documents.[2] The above-cited provisions of the Forbearance Agreement unambiguously stated that the Guarantors reaffirmed their Guaranties, that they were bound by these Guaranties unless and until all payments were timely made pursuant to the Loan Documents, and that the Guarantors would not be released if there was *any* default under the Loan Documents, including default of the principal payment.

We are unpersuaded by Borrowers' argument that the Guarantors assumed the obligation of curing the Existing Default in exchange for First State's promise to release them from their Guaranties. The Guarantors, under the terms of their guaranty agreements, were already obliged to cure the Existing Default pursuant to the term of the Guaranties.[3] The Forbearance Agreement memorialized an agreement that First State would not enforce the Guaranties at the time of the initial default so long as there was no future default.

---

[2] Essentially, the Forbearance Agreement was a conditional waiver of the Existing Default.

[3] The Guaranties provide that the Guarantors are liable for the repayment of "each and every debt, of every type and description, that [Kelly Capital] may now or at any time in the future owe [First State], up to the principal amount of $*Unlimited,* plus accrued interest, . . . and all other amounts agreed to be paid under [the Loan Documents]."

12

(b) At the same time, some evidence does exist to support the Borrowers' claim that the terms of the Forbearance Agreement was the product of mutual mistake, that the Guarantors should have been released of liability on the Note when they cured the then existing defaults at or about the time that the Forbearance Agreement was executed. First, they point to the affidavit of Moore, discussed previously, which says as much. More importantly, they point to certain documents produced by Hamilton State during discovery, which it purportedly received from the FDIC upon its purchase of the Note, which likewise seems to indiate that it was the mutual intent of both First State and the Borrowers that the Guarantors would be so released.

Specifically, Borrowers point to a "Classified Asset Approval" form, a Loan Request Proposal, and correspondence between First State and a guarantor as proof that the Forbearance Agreement did not truly reflect the parties' intent at the time it was executed. The "Classified Asset Approval" form, dated August 16, 2011, was signed as approved by five of the six members of First State's Executive Committee and recites that the purpose of the parties' agreement was to "[r]educe interest rate to 3.25%; release all guarantors on 7/1/13 (maturity) provided all interest is paid through

13

7/1/13 and all [real estate] taxes for 2010, 2011, & 2013 are paid in full."[4] It further noted that First State's position would be improved by this agreement because "[f]ailure to accept the reduction in interest rate, release of guarantors, and acceptance of interest payments from investors group may result in default, foreclosure, and acceleration of loss to [First State]. [First State] would have to maintain property taxes and property upkeep."

The Loan Request Proposal, dated July 26, 2011, completed by First State's Vice President, John Moore, provided that, under the agreement reached by First State, Kelly Capital, and the Guarantors, "[t]he primary risk [was] that the bank will lose the personal guaranties of the [Guarantors]." Further, in a letter sent by First State's Vice President to Kelly Capital, the Vice President stated that "First State[ ]. . . approved the following amendment to your loan[.] . . . The First State Bank agrees to release the personal guarant[ies] of [Guarantors] on July 1, 2013 provided all interest payments are paid as agreed including the payment that will be due on July 1, 2013. Also, all real estate taxes for years 2011 and 2012 must be paid when due."

---

[4] Assuming without deciding that this was the parties' true intent, there is some question as to whether the Guarantors complied with these terms.

14

Pretermitting whether it was indeed the parties' intent that the Guarantors were to be released and that the terms of the forbearance were the product of a mutual mistake, we find error in the trial court's conclusion that the Forbearance Agreement could be reformed under the doctrine of mutual mistake because a question of material fact remains as to whether Hamilton State was a bona fide purchaser for value without notice of such mistake.[5]

The equitable relief of reformation of the Forbearance Agreement is only available to the Guarantors if Hamilton State had actual or constructive notice of the alleged mutual mistake made by the parties to the agreement.[6] OCGA § 23-2-34 provides that "[e]quity will grant relief as between the original parties or their privies in law, in fact, or in estate, *except bona fide purchasers for value without notice.*" (Emphasis supplied.) See also OCGA § 23-1-20 ("A bona fide purchaser for value without notice of an equity will not be interfered with by equity"); *Yeazel v. Burger*

---

[5] We in no way conclude that there was, in fact, a mutual mistake in the drafting of the forbearance agreement, only that there was evidence which might support that conclusion.

[6] We find no merit in Borrowers' argument that Hamilton State has waived this argument on appeal by failing to include it in his summary judgment brief. The issue was raised, argued, and considered by the trial court. Therefore, it is properly before this Court on appeal. See *Pfeiffer v. Dept. of Transportation*, 275 Ga. 827, 828 (2), 830 (3) (573 SE2d 389) (2002).

15

*King Corp.*, 241 Ga. App. 90, 95 (2) (526 SE2d 112) (1999). "To qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue." (Footnote omitted.) *Virginia Highland Civic Assn., Inc. v. Paces Props., Inc.*, 250 Ga. App. 72, 74 (550 SE2d 128) (2001). And, "any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute" actual or constructive notice. (Citation and punctuation omitted.) *Montgomery v. Barrow*, 286 Ga. 896, 897 (1) (692 SE2d 351) (2010).

In granting summary judgment to the Guarantors on the reformation counterclaim, the trial court concluded that Hamilton State was not a bona fide purchaser for value without notice of the Loan. The Borrowers argue that pursuant to the documents in its file that Hamilton State had constructive notice of First State's real intent to release the Guarantors from liability under the guaranties. However, there is no evidence in the appellate record indicating *when* Hamilton State received these additional documents, which would be important in determining whether Hamilton State had constructive notice before the purchase or was a bona fide purchaser for value without notice.

16

The Borrowers argue that Hamilton State bears the burden of introducing evidence to support its claim that it was a bona fide purchaser for value without notice and, thus, that it must submit proof that it did not have notice of these documents at the time it purchased the Loan from the FDIC. Hamilton State argues otherwise, contending that as the nonmovant in the summary judgment proceeding that it did not bear this burden.

> The burden is on the party who moves for summary judgment to produce evidence which conclusively negates the essential elements entitling the respondent to recover under any theory that may be drawn fairly from the pleadings and the evidence. There is no duty placed upon the [non-movant] to produce evidence until the [movant's] evidence pierces the [non-movant's] pleadings and demands a finding in [the movant's] favor on the particular issue of fact made by the pleadings.

(Citation and punctuation omitted.) *Anderson v. Streck,* 190 Ga. App. 224, 225 (378 SE2d 526) (1989).

Thus, to prevail on their counterclaim seeking the equitable relief of reforming the Forbearance Agreement due to mutual mistake, the Guarantors, as the movants at the summary judgment stage, bore the initial burden of proving that Hamilton State had actual or constructive knowledge of a mutual mistake made by parties to the Forbearance Agreement at the time it assumed the Loan from the FDIC. The

17

Borrowers correctly note that Hamilton State has not pointed to any evidence that it did not have these documents at the time it acquired the Loan from the FDIC. However, "[t]here is a presumption of good faith which attaches to a purchaser for value and which remains until overcome by proof." (Citation omitted.) *Anderson*, supra at 226. The Borrowers have provided no evidence as to when Hamilton State received the documents. And, "to be entitled to summary judgment, a party who bears the burden of proof at trial must present the trial court with the facts showing its entitlement to judgment." *Pfeiffer*, supra at 830 (3).

Additionally, even assuming Hamilton State had the documents referenced by the Guarantors in its possession at or before it assumed the Loan from the FDIC, it remains a question of fact as to whether the Classified Asset Approval form, the Loan Request Proposal and the correspondence should have placed Hamilton State on constructive notice that the parties to the Forbearance Agreement made a mutual mistake in its drafting. The terms of the Forbearance Agreement specifically include an integration clause prohibiting consideration of extrinsic documents. See *Montgomery*, supra at 899 (1) (question of material fact remained as to whether defendant had sufficient notice of recorded deeds; thus, the summary judgment order finding defendant was a bona fide purchaser for value without notice was in error).

18

Accordingly, we find that the Borrowers have not overcome the presumption that Hamilton State was a bona fide purchaser for value without notice and that the trial court erred in granting summary judgment in their favor. Therefore, we reverse the grant of partial summary judgment to Borrowers on their counterclaim to reform the terms of the Forbearance Agreement. In light of this ruling, we also reverse the grant of summary judgment to Borrowers on their counterclaims for specific performance and breach of contract. Because issues of material fact remain, we affirm the denial of Hamilton State's motion to dismiss the Borrowers' counterclaims and the denial of Hamilton State's motion for summary judgment as to the Guarantors.

*Case No. A15A1293*

In Case No. A15A1293, the Borrowers cross-appeal, contending that the trial court erred in granting Hamilton State's motion for summary judgment against Kelly Capital on its claims arising under the Note and in awarding attorney fees to Hamilton State. The Borrowers also contend that the trial court erred in denying their motion to strike portions of the affidavit of Peter McLaughlin and its accompanying exhibits. Lastly, they also assign error to the trial court's rejection of the Guarantors' argument that they should have been released by the express terms of the Forbearance Agreement. For the following reasons, we reverse the trial court's grant of summary

19

judgment to Hamilton State against Kelly Capital under the terms of the Note, as well as reverse the award of attorney fees to Hamilton State.

2. The Borrowers do not contest Kelly Capital's liability under the Note. Rather, they contend that the trial court's award of summary judgment to Hamilton State on its claims against Kelly Capital was in error because portions of the affidavit presented as evidence on summary judgment were inadmissible. Specifically, the Borrowers argue that Hamilton State failed to present competent evidence of the transfer or assignment of the Loan Documents from the FDIC and failed to show its actual damages.

(a) In challenging the grant of summary judgment to Hamilton State on its claims against Kelly Capital under the Note, the Borrowers contend, inter alia, that Hamilton State relied upon inadmissible evidence to prove its damages.

> Where a party sues for damages, it has the burden of proof of showing the amount of loss in a manner in which the trial judge can calculate the amount of the loss with a reasonable degree of certainty. Thus, in a suit to enforce a promissory note, . . . the plaintiff has the burden of proving that the defendant is indebted to him in a definite and correct amount.

(Citations and punctuation omitted.) *Patrick Malloy Comms., LLC v. Comm. & Southern Bank*, __ Ga. App. __ (2) (Case No. A15A1383, decided October 2, 2015).

In support of damages, Hamilton State submitted the affidavit of its Senior Vice President and Special Assets Manager, Paul McLaughlin. In his affidavit, McLaughlin relied on, among other documents, an attached Loan History Record and the terms of the Note as the basis for his calculations, and he sought to authenticate the Loan History Record as a business record of Hamilton State. The Borrowers argue, however, that the Loan History Record was inadmissible and could not be relied upon by McLaughlin because the underlying business records upon which it was based were not also attached.

We need not determine whether the Loan History Record is inadmissible as a business record, however, because a review of that document reveals certain material discrepancies that are not explained. Specifically, McLaughlin states in his affidavit that Kelly Capital owes $566,824.82 in interest, but the Loan History Record does not reflect that amount. Because this discrepancy is material to the amount owed under the Note, we conclude that material issues of fact exist as to the amount of damages and reverse the trial court's award of summary judgment on this issue. See *Patrick Malloy Comms.*, supra at (2).

21

(b) "Every action shall be prosecuted in the name of the real party in interest." OCGA § 9-11-17 (a). The Borrowers next argue that Hamilton State was not entitled to summary judgment on its claims against Kelly Capital because it had not established its status as the real party in interest, as it had not presented admissible evidence that it was the successor-in-interest to the original lender, First State. We disagree.

In his affidavit, McLaughlin averred that he was the Senior Vice President and Special Assets Manager of Hamilton State, that he was custodian of the Loan Documents, that the Loan Documents were received and kept in the regular course of business of Hamilton State, that it was the regular practice of Hamilton State for an employee or representative with knowledge of the act, event or contract recorded to make a record at or near the time of its occurrence, and that the facts contained within the Affidavit were based upon his personal knowledge. McLaughlin also averred that the Loan Documents originated at First State, that First State was closed by the FDIC in January 2012, that the FDIC was appointed as receiver, and that the FDIC then transferred and assigned all interest in and to the Loan Documents to Hamilton State. He further explained that the Borrowers were in default under the Loan Documents. The Assignment of Security Instruments and other Loan

22

Documents from the FDIC to Hamilton State were attached to the affidavit as Exhibit 1.

The Borrowers argue that McLaughlin gave no indication in the affidavit as to how he obtained firsthand knowledge of the transfer and assignment of the Loan Documents from First State to the FDIC or from the FDIC to Hamilton State; thus, they argue, the trial court should have disregarded his statements regarding the assignment in his affidavit.

> While a statement in an affidavit that it is based upon personal knowledge is generally sufficient to meet the requirement that affidavits be made upon such knowledge, if it appears that any portion of the affidavit was not made upon the affiant's personal knowledge, or if it does not affirmatively appear that it was so made, that portion is to be disregarded in considering the affidavit in connection with a motion for summary judgment.

(Citation and punctuation omitted.) *Patrick Malloy Comms.*, supra at __ (1). However, even if the trial court should have disregarded such statements in McLaughlin's affidavit regarding the assignment for lack of personal knowledge, "the error was harmless because the other competent evidence of record demonstrated that [Hamilton State] was the assignee of the Note and Guarant[ies] as a matter of law." (Citation omitted.) See Id. at __ (1) (any error by the trial court in failing to disregard

23

affidavit of plaintiff bank's employee regarding the transfer of the subject loan from the FDIC to his employer bank for lack of personal knowledge of the transfer was harmless in light of other evidence properly admitted in the record).

Further, the Borrowers have admitted in judicio to the transfer and assignment of the Loan Documents to Hamilton State. They have stated several times in the appellate record, including in their First Amended and Restated Counterclaims against Hamilton State and in their appellate briefs, that Hamilton State is the successor-in-interest to First State with regard to the Loan Documents. "It is well established that a party may make admissions in judicio in their pleadings, motions and briefs." (Citations and punctuation omitted.) *Kensington Partners, LLC v. Beal Bank Nevada*, 311 Ga. App. 196, 196 (1) (715 SE2d 491) (2011) (finding that defendant debtors was bound by admissions in judicio that there was a valid assignment of the loan from the FDIC to defendant bank).

(c) As a result of our holdings in this Division, we need not address Borrowers' remaining argument regarding whether the trial court erred in striking portions of McLaughlin's Affidavit.

3. Borrowers next contend that the trial court erred in granting summary judgment to Hamilton State against Kelly Capital on its claim for attorney fees

24

pursuant to the statutory formula set forth in OCGA § 13-1-11. We agree.

OCGA § 13-1-11 (a) (1) provides for the enforcement of attorney fee provisions in promissory notes "up to but not in excess of 15 percent of the principal and interest owing" on the note, provided the note is collected by or through an attorney after maturity. "Accordingly, so long as the attorney fee provision of a promissory note does not violate the strictures of OCGA § 13-1-11 (a), it is enforceable. But the statute does not mandate the recovery of 15 percent attorney fees in every case." *S&A Indus., Inc. v. Bank of Atlanta*, 247 Ga. App. 377, 383 (5) (b) (543 SE2d 743) (2000).

In the Note at issue, the language of the fee provision provides that "if you hire an attorney to collect this note, I also agree to pay any fee *you incur* with such attorney plus court costs (except where prohibited by law)." (Emphasis supplied). McLaughlin's Affidavit calculated attorneys fees as $1,210,712.51, "which is equal to 15% of the first $500.00 of principal and interest owing on the Note and 10% of the amount of principal and interest owing on the Note in excess of $500.00." However, there is no evidence in the appellate record as to the *actual* amount of attorney fees Hamilton State incurred in collecting the Note. This Court has held that

25

where a Note specifies that a collecting party may only recover attorney fees actually incurred, the collecting party "must establish that it actually incurred the fees in that amount to recover the maximum." (Citation omitted.) Id. Because there was no evidence presented to support the award of actual attorney fees incurred, we reverse the trial court's grant of summary judgment on this issue.[7]

4. As noted in Division 1 of this opinion, we find that the express terms of the Forbearance Agreement do not contemplate that the Guarantors should have been released from their liabilities under their guaranties. Accordingly, we find no merit in Borrowers' remaining enumeration of error.

*In Case No. A15A1234, judgment is affirmed in part, reversed in part and case remanded. In Case No. A15A1293, judgment is reversed. Barnes, P. J., and McMillian, J., concur in judgment only.*

---

[7] Additionally, if the award of fees is dependent, at least in part, on the amount of principal and interest which is owed, such award would be in error as we have reversed summary on the note due to lack of proof of the amount of accrued interest owed.