**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

**November 3, 2023**

# In the Court of Appeals of Georgia

A23A0719, A23A0720. WW3 VENTURES, LLC v. THE BANK OF NEW YORK MELLON AS SUCCESSOR TRUSTEE UNDER NOVASTAR MORTGAGE FUNDING TRUST SERIES 2006-2; and vice versa.

HODGES, Judge.

In this quiet title action, we must consider whether a defective security deed, which does not provide constructive notice to future bona-fide purchasers of the property it encumbers, may yet provide "inquiry notice" in view of a purchaser's failure to inquire into the chain of title prior to purchasing the subject property. Here, WW3 Ventures, LLC ("WW3") — which, by its own admission, did not conduct a title search prior to its purchase of property at a Gwinnett County sheriff's sale[1] —

---

[1] See, e.g., OCGA § 23-1-17 ("Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led."); *Deljoo v. SunTrust Mtg.*, 284 Ga. 438, 439 (668 SE2d 245) (2008) ("[A] purchaser of land in this state is charged with notice of every fact shown

sought to confirm its title to the property despite a security deed held by The Bank of New York Mellon as Successor Trustee under Novastar Mortgage Funding Trust Series 2006-2 ("BNY Mellon") that had not been attested by an unofficial witness.[2] WW3 and BNY Mellon filed competing motions for summary judgment, with WW3 arguing that BNY Mellon's security interest did not provide constructive notice and BNY Mellon seeking dismissal of WW3's quiet title action and an order recognizing its security interest as a valid first priority lien. The Superior Court of Gwinnett County appointed a special master,[3] who recommended that title vest in WW3 subject to BNY Mellon's security interest. The trial court adopted the special master's report and recommendation in full as the trial court's judgment and awarded title to the property to WW3 subject to BNY Mellon's security interest, and both WW3 and BNY Mellon appeal.

In Case No. A23A0719, WW3 contends that BNY Mellon's security deed did not provide constructive notice and was, therefore, invalid. In Case No. A23A0720,

---

by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed.") (citation and punctuation omitted).

[2] See OCGA § 44-14-61 ("In order to admit deeds to secure debt . . . to record, they shall be signed by the maker, attested by an officer as provided in [OCGA § ] 44-2-15, and attested by one other witness").

[3] See Uniform Superior Court Rule 46 (A) (1) (a), (C).

BNY Mellon argues that its security deed provided constructive notice to WW3 and that WW3's efforts to obtain title are barred by equity. We have consolidated these cases for purposes of appeal and, in view of controlling precedent from the Supreme Court of Georgia, we conclude that BNY Mellon's security deed did not provide constructive notice to prospective purchasers of BNY Mellon's security interest; therefore, to the extent the trial court found that WW3 had constructive notice of BNY Mellon's security deed, it erred. However, other documents in the chain of title each referenced the property and BNY Mellon's security interest and, therefore, independent of the lack of constructive notice provided by the security deed itself, we conclude that the trial court correctly determined that WW3 was under inquiry notice of BNY Mellon's security interest. Accordingly, we affirm the trial court's grant of summary judgment in Case No. A23A0719. In Case No. A23A0720, we vacate that portion of the trial court's order assessing the special master's fees against BNY Mellon, remand that portion of the case for further proceedings, and affirm the remainder of the trial court's judgment.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving

3

party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Giles v. Swimmer*, 290 Ga. 650, 651-652 (1) (725 SE2d 220) (2012).[4] So viewed, the largely undisputed evidence revealed that Laurie and George Warren purchased a residential property located at 4504 Allen Hollow Place, Suwanee, Gwinnett County, on May 25, 1999 ("the property").[5]

In March 2006, the Warrens refinanced their mortgage on the property with Novastar Mortgage, Inc. ("Novastar"); as a result, the Warrens conveyed a security deed to Mortgage Electronic Registration Systems, Inc. as nominee for Novastar ("MERS"). The security deed, recorded in the Gwinnett County land records on June 6, 2006, was executed by the Warrens and notarized, but it does not contain an

---

[4] Because the trial court adopted the special master's recommendation adjudicating competing summary judgment motions, we apply the summary judgment standard of review rather than a post-trial standard. Compare *Giles*, 290 Ga. at 651-652 (1) and *Smith v. Mitchell County*, 334 Ga. App. 374, 378 (2) (779 SE2d 410) (2015) ("In an action to quiet title brought under OCGA § 23-3-60 et seq., the findings of the special master which are adopted by the trial court will be upheld unless clearly erroneous. Therefore, if there is *any* evidence supporting the judgment of the trial court, it will not be disturbed.") (citation and punctuation omitted; emphasis supplied).

[5] The parties seem to agree that the property appeared on a plat that was recorded in the Gwinnett County land records and was incorporated into the Warrens' warranty deed. Although the plat is included in the record, it is illegible in its current form.

attestation by an unofficial witness.[6] Thereafter, MERS assigned the security deed to BNY Mellon in December 2010; the assignment referenced the March 2006 security deed.[7]

In March 2015, the Warrens' homeowners' association secured a judgment against the Warrens because they failed to satisfy $13,500 in unpaid homeowners' assessment liens. A levy and sheriff's sale followed in August 2015, at which WW3 was the successful bidder.

At some point after its purchase of the property,[8] WW3 became aware of BNY Mellon's interest and filed the present quiet title action in April 2021 to obtain "a decree that the subject property is free and clear of the [security deed] held by . . . BNY Mellon. . . ." BNY Mellon denied WW3's allegations, and the trial court

---

[6] "[A]n attestation is the act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact. Put differently, to attest a deed means to see it signed and then add one's own signature as a declaration of that fact." (Citation, punctuation, and emphasis omitted.) *In re Lindstrom*, 30 F4th 1086, 1090 (I) (11th Cir. 2022).

[7] BNY Mellon filed a corrective assignment in July 2018 to correct "the assignee & assignor on the [2010 assignment]. . . ."

[8] The record demonstrates that WW3 was aware of BNY Mellon's security interest at least as early as May 2017, when WW3 filed a declaratory judgment action against BNY Mellon to confirm "the balance owed on the Subject Security Deed or if no response is forthcoming an order cancelling the Subject Security Deed as to the Subject Property." WW3 voluntarily dismissed that action in February 2019.

appointed a special master. BNY Mellon eventually moved for summary judgment,[9] asserting that WW3, by virtue of its prior declaratory judgment action and its acknowledgment of BNY Mellon's security interest, was not "entitled to the equitable remedy of cancellation of a security deed on the same real property [for which it failed to satisfy the security deed] via a quiet title action." In support of its motion, BNY Mellon offered affidavits from the notary public who witnessed the security deed and a purported unofficial witness who was present when the Warrens executed the security deed but "erroneously failed to sign [the security deed] in the designated spaces as unofficial witness." WW3 filed its own motion for summary judgment, asserting that its principal had neither actual nor constructive knowledge of BNY Mellon's security interest prior to the August 2015 sheriff's sale. To support its motion, WW3's principal averred that he did not have any actual notice of BNY Mellon's lien and did not conduct a title examination prior to purchasing the property at the sheriff's sale.

---

[9] BNY Mellon initially moved to dismiss WW3's petition for failure to state a claim. WW3 responded to BNY Mellon's motion and countered with its own motion for judgment on the pleadings. The trial court denied BNY Mellon's motion to dismiss, but made "no findings or rulings as to [WW3's] pending motion for judgment on the pleadings. . . ."

6

Following a hearing on the competing summary judgment motions, the special master issued a report and recommendation, in which he recommended that "title vest in [WW3], but subject to [BNY Mellon's] security deed. . . ." In reaching his conclusions, the special master acknowledged that the security deed was defective due to the missing unofficial witness signature, adding that the closing attorney's affidavit, executed contemporaneously with the security deed, did not cure the deficient security deed. Nevertheless, the special master found that WW3 had constructive notice of the security deed because it was cross-referenced in a plat and in the 2010 assignment. The special master also determined that BNY Mellon's equitable arguments were irrelevant. Although WW3 objected to the special master's report and BNY Mellon moved to modify the report in part, the trial court approved and adopted the report in full as its final judgment. As a result, the trial court awarded legal title to the property to WW3 subject to BNY Mellon's security deed and assessed the special master's fees against BNY Mellon. These cross-appeals follow.

*Case No. A23A0719*

1. WW3 first contends that the trial court erred in awarding it title to the property subject to BNY Mellon's interest because a defective security deed does not provide constructive notice or inquiry notice under Georgia law. To the extent the trial

7

court determined that the security deed itself provided constructive notice, we agree with WW3 that the trial court erred. However, because the trial court correctly concluded that WW3 was under inquiry notice of BNY Mellon's security interest, we affirm the trial court's judgment.

To reach his conclusion that the security deed provided WW3 with constructive notice, the special master relied upon references to the security deed in a plat and in the 2010 assignment. Citing *Deljoo v. SunTrust Mtg.*,284 Ga. 438, 439 (668 SE2d 245) (2008), the special master found that both the plat and the 2010 assignment cross-referenced the security deed and that, because these documents were part of the chain of title, WW3 was "charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed." (Emphasis omitted.). The trial court adopted the special master's report in full as its judgment.

At the outset, we note that "before any deed to realty or personalty or any mortgage, bond for title, or other recordable instrument executed in this state may be recorded, it shall be an original instrument and shall be attested or acknowledged as provided by law." OCGA § 44-2-14 (a). To that end, "[i]n order to admit a mortgage to record, it shall be signed by the maker, attested by an officer as provided in [OCGA

8

§ ] 44-2-15,[10] *and attested by one other witness.*" (Emphasis supplied.) OCGA § 44-14-33. Similarly, "[i]n order to admit deeds to secure debt or bills of sale to secure debt to record, they shall be signed by the maker, attested by an officer as provided in [OCGA § ] 44-2-15, *and attested by one other witness.*" (Emphasis supplied.) OCGA § 44-14-61. As a result, nothing in OCGA § 44-2-14 "shall dispense with another witness where an additional witness is required." OCGA § 44-2-14 (a).

(a) *Constructive Notice.* For the following reasons, we conclude that BNY Mellon's security deed did not *itself* provide constructive notice of a security interest.

(i) *Constructive Notice Generally and the Effect of a Defective Instrument.* "In the absence of fraud, if a mortgage is duly signed, witnessed, filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent bona fide purchasers." OCGA § 44-14-33. In contrast, "[a] mortgage which is recorded . . . without due attestation . . . shall not be held to be notice to subsequent bona fide purchasers." OCGA § 44-14-39. "[T]he objects of a mortgage and security deed under the provisions of the Code are identical — security for a debt. While recognizing the technical difference between a mortgage and security deed hereinbefore pointed out, [the Supreme Court of Georgia] has

---

[10] A notary public is one such recognized officer. See OCGA § 44-2-15.

9

treated deeds to secure debts as equitable mortgages." (Citation and punctuation omitted.) *United States Bank Natl. Assn. v. Gordon*, 289 Ga. 12, 14 (3) (709 SE2d 258) (2011) ("*Gordon I*"). It follows, then, that a security deed that does not include the signature of an unofficial witness as required by OCGA § 44-14-61 does not provide constructive notice to bona fide purchasers.[11] See OCGA § 44-14-39; *Wells Fargo Bank N.A. v. Gordon*, 292 Ga. 474, 475 (1) (749 SE2d 368) (2013) ("*Gordon II*") (holding that a security deed that did not include unofficial witness signature did not provide constructive notice); see also *Gordon I*, 289 Ga. at 15 (3) (concluding that a security deed that is "not properly attested or acknowledged . . . is ineligible for recording" and does not provide constructive notice) (citation and punctuation omitted).

(ii) *Analysis*.

---

[11] "To qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue." (Citation and punctuation omitted.) *Rolan v. Glass*, 305 Ga. App. 217, 218 (1) (699 SE2d 428) (2010). It is not disputed that, at the time of the sheriff's sale, WW3 had no actual notice of BNY Mellon's security deed.

(A) *Security Deed*. The question of whether BNY Mellon's security deed itself provided constructive notice is controlled by *Gordon II*.[12] In that case, a debtor executed a security deed in favor of Wells Fargo, but the unofficial witness signature block was left blank. 292 Ga. at 474. Contemporaneously recorded with the security deed was a waiver of borrower's rights, which did include an unofficial witness signature. Id. at 474-475. The debtor declared bankruptcy, and the trustee of the debtor's bankruptcy estate moved to avoid Wells Fargo's security interest because the security deed was not signed by an unofficial witness and, therefore, "it was not duly recorded and it did not provide constructive notice to a subsequent bona fide purchaser[.]" Id. at 475.

When Wells Fargo appealed the denial of its summary judgment motion to the United States Court of Appeals for the Eleventh Circuit, the Eleventh Circuit certified the question of "[w]hether a security deed that lacks the signature of an unofficial witness should be considered 'duly filed, recorded, and indexed'" to the Supreme Court of Georgia. *Gordon II*, 292 Ga. at 474. In answering the certified question in

---

[12] The special master did not cite either *Gordon I* or *Gordon II* in his analysis except to note that the lack of an unofficial witness' signature on the security deed was not cured by the closing attorney's affidavit. See *Gordon II*, 292 Ga. at 476 (1) (holding that "the attestation of [a] waiver . . . cannot be substituted for the proper attestation of the security deed").

11

the negative, our Supreme Court noted that "[a] deed that is not properly attested is ineligible for recording" and that, "because [an] eight-page security deed lacked the signature of an unofficial witness, it was not in recordable form as required by OCGA § 44-14-33 and did not provide constructive notice." Id. at 475 (1).

Here, the deficiency in BNY Mellon's security deed is identical to the omission at issue in *Gordon II*.[13] Although the security deed is signed by the maker and is attested by a notary public, it lacks the attestation of an unofficial witness. See OCGA §§ 44-14-33, 44-14-61; *Gordon II*, 292 Ga. at 475 (1). The absence of an official witness signature confirms that BNY Mellon's security deed "was not in recordable form as required by OCGA § 44-14-33 and did not provide constructive notice." Id. Moreover, as our Supreme Court has noted, "it costs nothing and requires no special expertise or effort for a closing attorney, or a lender, or a title insurance company to examine the signature page of a deed for missing signatures before it is filed[;]" allowing BNY Mellon to benefit from Novastar's failure to adhere to these

---

[13] Cases cited by BNY Mellon for the proposition that the plat and 2010 assignment provided *constructive* notice to WW3 are factually distinguishable and, at any rate, do not alter the result required by *Gordon II*. See *Hamilton State Bank v. Kelly Capital Investments*, 335 Ga. App. 252, 260 (779 SE2d 757) (2015) (physical precedent only); *Gallagher v. The Buckhead Community Bank*, 299 Ga. App. 622, 625-626 (1) (683 SE2d 50) (2009); *Virginia Highland Civic Assn. v. Paces Properties*, 250 Ga. App. 72, 74 (550 SE2d 128) (2001).

12

inexpensive responsibilities "would shift to the subsequent bona fide purchaser and everyone else the burden of determining [possibly decades after the fact] the genuineness of the grantor's signature and therefore the cost of investigating and perhaps litigating whether or not an unattested deed was in fact signed by the grantor." (Citation and punctuation omitted.) *Gordon I*, 289 Ga. at 17 (4); see also *Gordon II*, 292 Ga. at 476-477 (1). Therefore, we conclude that BNY Mellon's defective security deed did not provide constructive notice to WW3 at the time of WW3's purchase of the subject property.

*In re Kim*, 571 F3d 1342 (11th Cir. 2009), upon which BNY Mellon chiefly relies, does not require a different result. In that case, a bankruptcy trustee moved to avoid a security deed because it had not been notarized. Id. at 1344 (I). The bankruptcy court granted the trustee's summary judgment motion, concluding that the security deed violated OCGA § 44-14-33 and did not provide constructive notice to bona fide purchasers, and the district court affirmed. Id. The Eleventh Circuit reversed, holding that even if the security deed was defective due to the lack of a notary seal (a fact the court assumed *arguendo*), a closing attorney's affidavit executed contemporaneously with the deed — which incorporated the deed and contained signatures by the maker, a notary public, and an unofficial witness —

13

substantially complied with the remedial provisions of OCGA § 44-2-18 to give effect to the security deed. Id. at 1345-1347 (III).

Setting aside that *Kim* is merely persuasive authority that was decided before the binding precedents of *Gordon I* and *Gordon II*, this case is factually dissimilar. Here, rather than the presence of three required attestations to the security deed coupled with the mere lack of a notarial stamp (as in *Kim*), the absence of the attestation of one of the required signatories — an unofficial witness — is evident on the face of the security deed in this case. While the former may be cured by substantial compliance with OCGA § 44-2-18 (as the court found in *Kim*), the latter cannot. OCGA § 44-2-18 provides that "[i]f a deed is not attested by *one of the officers named in* [OCGA § ] *44-2-15*, it may be recorded upon the affidavit of a subscribing witness[.] . . . A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud." (Emphasis supplied.) Therefore, under the plain language of the remedial statute, it applies only to the lack of attestation by "officers named in [OCGA § ] 44-2-15," such as notaries public, and not to unofficial witnesses. See generally *In re Lindstrom*, 30 F4th 1086, 1093 (III) (11th Cir. 2022) (holding that "the attestation of one document cannot be substituted for the proper attestation of any related or integrated document") (citation and

14

punctuation omitted); *In re Grier*, No. 19-68798-JWC, 2022 WL 4658819, 2022 Bankr. LEXIS 2757, *8 (IV) (B) (Bankr. N. D. Ga. Sept. 30, 2022) ("the term 'subscribing witness' in [OCGA § 44-2-18] means someone who attested the security deed in the first place").[14] To hold otherwise would circumvent both the controlling authority of *Gordon II* and OCGA § 44-14-39. See OCGA § 44-14-61 (providing security deeds "shall be signed by the maker, attested by an officer as provided in [OCGA § ] 44-2-15, and attested by one other witness"); OCGA § 44-14-39 ("A mortgage which is recorded . . . without due attestation . . . shall not be held to be notice to subsequent bona fide purchasers."); see also OCGA § 44-2-14 (a) (providing that "nothing in this Code section shall dispense with another witness where an additional witness is required"); *Gordon II*, 292 Ga. at 476 (1) (concluding that the attestation of a subsequent document "cannot be substituted for the proper attestation of the security deed").[15] Therefore, *Kim* is inapplicable.

---

[14] In fact, these authorities at least question *Kim*'s continued full viability. See *In re Grier*, 2022 Bankr. LEXIS 2757, *8 (IV) (B) (noting that "the more recent *Lindstrom* decision" foreclosed arguments concerning OCGA § 44-2-18).

[15] For these same reasons, BNY Mellon's argument, in its cross-appeal, that the trial court erred in concluding that the closing attorney's affidavit provided WW3 constructive notice of the security deed, is unavailing. See generally OCGA §§ 44-14-39, 44-14-61; *In re Lindstrom*, 30 F4th at 1093 (III); *Gordon II*, 292 Ga. at 476 (1) (noting that a "signature of [an] unofficial witness, which appears on the adjustable

(B) *2010 Assignment*. WW3 also argues that the trial court erred in finding that the 2010 assignment provided *constructive* notice. While the assignment incorporated the security deed and itself included a signature by an unofficial witness, our law makes clear that the assignment did not salvage the deficient security deed's lack of constructive notice. See *Gordon II*, 292 Ga. at 476 (1). Accordingly, the trial court erred in concluding that the 2010 assignment supplied constructive notice of BNY Mellon's security interest.

In sum, neither the security deed itself nor the 2010 assignment provided WW3 with constructive notice of BNY Mellon's security interest.

(b) *Inquiry Notice*. Independent of the security deed's lack of constructive notice, however, other documents in the chain of title referenced the security deed, and those documents placed future purchasers — including WW3 — on inquiry notice. Ultimately, then, the trial court did not err in awarding title to WW3 subject to BNY Mellon's security interest.

---

rate rider, attests to the proper execution of that document only. Although the adjustable rate rider is incorporated into the terms of the deed to secure debt, the deed to secure debt *itself* remains improperly attested and ineligible for recordation.") (citation and punctuation omitted; emphasis supplied).

16

(i) *Inquiry Notice Generally*. Separate and distinct from constructive notice is the concept of "inquiry notice."[16] See generally *Gordon II*, 292

---

[16] The special master, and the parties in their motions for summary judgment, only made passing references to the concept of "inquiry notice." What is lacking from the parties' appellate briefs is any meaningful analysis or argument on the subject of inquiry notice (outside of general citations of authority), including a discussion of how inquiry notice differs, if it differs, from constructive notice under Georgia law. See, e.g., *PraultShell, Inc. v. River City Bank*, 366 Ga. App. 70, 80 (2) (880 SE2d 616) (2022) ("legal analysis, at a minimum, requires a discussion of the appropriate law as applied to the relevant facts") (citation and punctuation omitted). As we note below, our authorities sometimes seem to equate these principles, and other jurisdictions suggest similarly opaque approaches. See, e.g., *In re Simmons*, 510 B.R. 76, 96 (III) (A) (2) (a) (Bankr. S.D. Miss. 2014) (identifying separate "concepts of actual notice and constructive notice" as well as inquiry notice which, "as recognized in Mississippi, arises when a party has actual notice or knowledge of facts that would lead a reasonably prudent person to question the sufficiency of title to property[,]" and that "a party is not on inquiry notice from the mere recordation of a deed evidencing an interest in property"); *In re Savage*, 504 B.R. 921, 924-925 (Bankr. W.D. Ark. 2014) ("In Arkansas, three kinds of notice are generally recognized in the analysis of a bona fide purchaser: constructive notice, actual notice, and inquiry notice[,]" and that "inquiry notice appears to be recognized as a component of either or both constructive notice and actual notice"); *Blevins v. Johnson County*, 746 SW2d 678, 683 (II) (A) (Tenn. 1988) (noting that the "kind of notice occupying what amounts to a middle ground between constructive notice and actual notice is recognized as inquiry notice[,]" and that "in Tennessee, it has come to be considered as a variant of actual notice") (citation and punctuation omitted).

This is not a mere exercise in semantics. Indeed, some of our cases, including cases cited by the parties, have been less than clear and seem to commingle the different forms of notice. See *Hamilton State Bank*, 335 Ga. App. at 260 (1) (b) ("any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute *actual or constructive notice*") (citation and punctuation omitted; emphasis supplied); *Gallagher*, 299 Ga. App. at

17

Ga. at 477-478 (2) (analyzing inquiry notice despite lack of constructive notice due to defective security deed); *In re Jones*, 508 BR 916, 920 (Bankr. M.D. Ga. 2017) ("Georgia law provides that a purchaser takes property free of a prior unrecorded interest unless the purchaser had actual or constructive notice of it *or* if the circumstances give rise to a duty of inquiry that would have led to the discovery of the prior interest, so-called 'inquiry notice.'") (citation omitted; emphasis supplied); see also *In re Municipal Corrections, LLC*, 501 BR 119, 131 (V), n. 23 (Bankr. N.D. Ga. 2013) (same, citing *Gordon II*, 292 Ga. at 477-478 (2) and *Deljoo*, 284 Ga. at 439). Georgia's duty to inquire is codified at OCGA § 23-1-17, which provides that "[n]otice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led." Stated

---

625 (1) (holding that "notice which is sufficient to create this duty to inquire [under OCGA § 23-1-17] *is also constructive notice* of 'everything to which it is afterwards found that such inquiry might have led'") (citation omitted; emphasis supplied). Moreover, we cannot conclude that constructive and inquiry notice are one and the same without causing at least some tension between the general inquiry notice statute (OCGA § 23-1-17) and the specific statutes providing that a security deed in non-recordable form does not provide notice at all (including OCGA § 44-14-39). This tension is relieved by concluding, as the courts in *Gordon II*, *In re Jones*, and *In re Municipal Corrections* concluded, that constructive notice and inquiry notice offer different avenues to a party's notice of a previously-created security interest. See *Gordon II*, 292 Ga. at 477-478 (2); *In re Jones*, 508 BR at 920; *In re Municipal Corrections,* 501 BR at 131 (V).

18

differently, "[a] purchaser of land in this state is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed." (Citation and punctuation omitted.) *Gordon II*, 292 Ga. at 477 (2); see also *Deljoo*, 284 Ga. at 439 (same); *Baxter v. Bayview Loan Servicing*, 301 Ga. App. 577, 585 (1) (b) (688 SE2d 363) (2009). To that end, if a description of land in a recorded instrument provides a sufficient description of the property, the "purchaser should be deemed to be put upon inquiry, if he fails to prosecute this inquiry he is chargeable with all the notice he might have obtained had he done so." (Citation and punctuation omitted.) *BPP069, LLC v. Lindfield Holdings, LLC*, 346 Ga. App. 577, 584 (1) (816 SE2d 755) (2018).

(ii) *Analysis*. In this case, the 2010 assignment of BNY Mellon's security deed, which specifically referenced the security deed and was recorded before WW3 purchased the property at the sheriff's sale, included the property's postal address and was indexed under the parties' names.[17] See generally *Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 688-689 (3) (534 SE2d 145) (2000) (holding that a parcel's postal address may constitute "a legally sufficient description" if it refers to a specific

---

[17] There does not appear to be any dispute that the postal address included in the 2010 assignment is accurate. In fact, the security deed, the 2010 assignment, and the 2018 corrective assignment each listed the same postal address for the property.

19

parcel). As such, the 2010 assignment created a duty to inquire as to the existence of the security deed, even if the security deed itself was unrecordable. See *Montgomery v. Barrow*, 286 Ga. 896, 897 (1) (692 SE2d 351) (2010). It follows that WW3 had inquiry notice of the 2010 assignment and BNY Mellon's security interest. See OCGA § 23-1-17; *Gordon II*, 292 Ga. at 477 (2); *Deljoo*, 284 Ga. at 439. Moreover, WW3's principal admitted that he did not conduct a title examination prior to purchasing the property at the sheriff's sale. Once its duty to inquire arose, however, WW3's ignorance of BNY Mellon's security interest, due to WW3's failure to make *any* inquiry, was tantamount to WW3's "constructive knowledge of that fact." (Citation and punctuation omitted.) *Baxter*, 301 Ga. App. at 585 (1) (b).[18]

---

[18] There is, of course, an argument that this case is not so much about whether WW3 conducted an inquiry prior to its purchase of the property at the sheriff's sale, but the legal effect, if any, of whatever WW3 might have found had it looked. In other words, had it looked, WW3 would have discovered a security deed that was not attested by an unofficial witness and, therefore, was not in recordable form and did not provide constructive notice as a matter of law. This argument is precluded by *Gordon II*, a case involving an identically-defective security deed in which our Supreme Court determined that the security deed did not provide constructive notice but recognized that the possibility of inquiry notice remained. 292 Ga. at 477-478 (2).

20

Accordingly, for the foregoing reasons,[19] we affirm the trial court's judgment awarding title to WW3 subject to BNY Mellon's security deed.

2. In view of our decision in Division 1, we need not consider WW3's remaining enumeration of error.[20]

*Case No. A23A0720*

3. Relying upon the weathered principle that "[h]e who would have equity must do equity," BNY Mellon first contends in its cross-appeal that the trial court "discard[ed] basic equity" in concluding that equitable relief is not available to WW3 without first satisfying BNY Mellon's security deed. See OCGA § 23-1-10. Stated differently, BNY Mellon argues that WW3 may not "avail itself of equity to otherwise quiet [BNY Mellon's] [security] interest. . . ." In Division 1, we determined that WW3's interest in the property is subject to BNY Mellon's security interest.

---

[19] See generally *Albany Oil Mill v. Sumter Elec. Membership Corp.*, 212 Ga. App. 242, 243 (3) (441 SE2d 524) (1994) ("A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed."); *Stephen A. Wheat Trust v. Sparks*, 325 Ga. App. 673, 679 (4), n. 8 (754 SE2d 640) (2014) ("We will affirm the grant of summary judgment if it is right for any reason.").

[20] WW3's appellant's brief also preemptively addresses at least one argument presented in BNY Mellon's cross-appeal: that BNY Mellon's equitable arguments were irrelevant. This argument will be addressed in Division 3 below as part of Case No. A23A0720.

Accordingly, we need not consider this enumeration since no instrument has been cancelled as a result of WW3's quiet title action. See generally *Taylor, Bean & Whitaker Mtg. Corp. v. Brown*, 276 Ga. 848, 850 (2) (583 SE2d 844) (2003) ("[*E*]*quity will not decree the cancellation of an instrument* where anything of value has been received until repayment is either made or tendered, or the defendant has stated that, should a tender be made, it would be refused.") (citation and punctuation omitted; emphasis supplied); *Montia v. First-Citizens Bank & Trust Co.*, 341 Ga. App. 867, 870 (801 SE2d 907) (2017) ("A person whose property is subject to a deed to secure debt cannot prevail in a quiet title action unless she has satisfied the debt.").

4. BNY Mellon also asserts that the trial court erred in "apportioning an indefinite and non-fixed sum" of special master's fees against it. In view of our decision in Division 1, and because we cannot evaluate the trial court's exercise of discretion as to the special master fee assessment, we vacate that portion of the trial court's judgment and remand this case for further proceedings.

OCGA § 23-3-68 provides that

[t]he [trial] court shall fix a reasonable compensation, not less than $50.00, to be paid to the master appointed under this part and shall fix the compensation to be paid to any representative in the nature of a

guardian ad litem appointed under this part. These fees are to be taxed in the discretion of the court as a part of the costs.

"Because the reasonableness of fees and costs is a matter within the trial court's discretion, the appellate court will not interfere with the decision of the trial court unless there has been an abuse of that discretion." (Citation and punctuation omitted.) *Boyd v. JohnGalt Holdings, LLC*, 294 Ga. 640, 649 (7) (755 SE2d 675) (2014).

In its order adopting the special master's report and recommendation, the trial court directed that payment of the special master's fees "be assessed and paid by Respondent BNY [Mellon] within 30 days from the entry of this Order." From this statement, it is not clear that the trial court exercised its discretion at all. Moreover, there is nothing in the record demonstrating the amount of the fees awarded such that we can adequately evaluate whether the trial court abused its discretion in assessing all of the special master's fees in whatever amount against BNY Mellon. Cf. *Abdalla v. Atlanta Nephrology Referral Center*, 338 Ga. App. 36, 40 (789 SE2d 288) (2016) (vacating attorney fee award as premature and remanding to trial court for further proceedings). Accordingly, we vacate the trial court's special master fee assessment and remand this case for further proceedings.

In sum, there appear to be three avenues under Georgia law by which WW3 could have possessed notice of BNY Mellon's security interest: actual notice, constructive notice, and inquiry notice. The first avenue is not at issue in this case. The second avenue is foreclosed by *Gordon II* because the security deed was not attested by an unofficial witness and, therefore, was not in recordable form and did not provide constructive notice as a matter of law. The third avenue, made available by other documents in the chain of title that referenced the property and BNY Mellon's security interest, provided WW3 with inquiry notice such that it "would be prompted to make inquiries as to the existence of a security deed in the property's chain of title," *Gordon II*, 292 Ga. at 477 (2) — independent of the lack of constructive notice provided by the security deed itself. Therefore, we conclude that the trial court correctly determined that WW3 was under inquiry notice of BNY Mellon's security interest and properly awarded title to the property to WW3 subject to the security deed. As a result, in Case No. A23A0719, we affirm the trial court's judgment awarding title to WW3 subject to BNY Mellon's security deed; in Case No. A23A0720, we affirm the trial court's judgment in part, vacate that portion of the trial court's judgment assessing special master fees, and remand this case for further proceedings.

24

*Judgment affirmed in Case No. A23A0719. Judgment affirmed in part and vacated in part, and case remanded in Case No. A23A0720. Miller, P. J., concurs. Mercier, C. J., concurs in judgment only.*